[Civ. No. 3780. First Appellate District, Division One.—June 7, 1921.]

PHIL LOBREE, Respondent, v. L. E. WHITE LUMBER COMPANY, Defendant; GOODYEAR REDWOOD COMPANY (a Corporation), Appellant.

[1] CONTRACTS—PURCHASE OF RELINQUISHMENT OF HOMESTEAD CLAIMS —LIABILITY OF SUCCESSOR OF PURCHASER—EVIDENCE OF SIMILAR TRANSACTIONS.—In an action to recover the balance of a sum orally agreed to be paid for the relinquishment by plaintiff and his assignors of certain homestead claims, where the corporation which took over all the properties of the lumber company that had agreed to pay said sum disclaimed all liability therefor, evidence that the lumber company had entered into a similar contract in writing with other settlers and that the corporation, after taking over the affairs of the lumber company, actually paid several of the settlers claiming under that agreement is properly admitted.

[2] ID.—ISSUES—CIRCUMSTANTIAL EVIDENCE—RELEVANCY.—A fact in issue may be proved either by direct evidence of the fact, or by proof of other facts or circumstances, from which the fact in issue may be inferred; and any evidence tending to show the probability or improbability of an issue of fact is relevant to such issue.

[3] ID.—FAILURE TO PRODUCE WRITTEN AGREEMENT—MOTION TO REOPEN CASE—DISCRETION OF TRIAL COURT.—During the presenta-

tion of defendants' case, it having appeared that the contract between the lumber company and the corporation that succeeded to its properties was in writing, and that a copy of the contract was in existence, and the plaintiff having successfully objected to any testimony as to its contents unless the witness produced the writing, which was not done, the trial court did not. commit an abuse of discretion in denying defendants' motion, made after the trial was concluded, but before decision, to reopen the case that they might introduce certain designated portions of the written agreement, particularly where the introduction of the portions of the contract designated without explanatory testimony would have accomplished little, and no satisfactory reason was given by the defendants for not producing the agreement when its contents were under discussion and the cause was on trial.

[4] ID.—ASSUMPTION OF OBLIGATION BY SUCCESSOR—FINDINGS—EVIDENCE.—In this action to recover the balance of a sum orally agreed to be paid for the relinquishment by plaintiff and his assignors of certain homestead claims, the trial court was correct in reaching the conclusion that it was a part of the transaction between the lumber company, which had made the agreements, and the corporation that had taken over all its properties, including its rights in the claims in question, that the latter should, and that it did, assume the payment of the obligations of the lumber company to plaintiff and his assignors, and the court's finding to that effect was sufficiently supported by the evidence.

[5] ID.—TIME FOR PERFECTING TITLE—SILENCE OF AGREEMENT—REASONABLE TIME IMPLIED.—The agreements between the lumber company and plaintiff and his assignors having provided that the latter should not be paid the balance of the sum agreed upon for their relinquishments until the lumber company should have perfected title to the property, but no time having been fixed in the agreement as to when the lumber company should perfect title to the claims and pay the remaining amounts due, the law annexed as an incident to the agreement that the title should be acquired within a reasonable time and that reasonable diligence should be used to secure title to the land, upon the completion of which the payment was contingent; and five years having elapsed between the making of such agreement and the bringing of action to recover the balance due, the trial court was justified in taking the view that a reasonable time for securing title had elapsed.

APPEAL from a judgment of the Superior Court of Mendocino County.   J. Q. White, Judge.   Reversed.

The facts are stated in the opinion of the court.

Hale McCowen, Jr., J. A. Mackenzie and Horatio Alling for Appellant.

Robert Duncan for Respondent.

WASTE, P. J.—This is an appeal by the Goodyear Redwood Company, one of the defendants, from a judgment rendered against it and its codefendant, the L. E. White Lumber Company. The plaintiff is one of a number of settlers who relinquished to the L. E. White Lumber Company certain homestead rights and claims to timber lands in Mendocino County. The complaint is in five counts, each of which states a cause of action as against the defendants' general demurrer. In the first, plaintiff seeks to recover upon an alleged oral agreement made by the defendant White Company to pay him $3,750, for a homestead relinquishment, and for services rendered in connection with securing like relinquishments from other settlers, which obligation, it is alleged, the appellant assumed and agreed to pay. The other four counts are based upon assignments to plaintiff by other settlers of similar causes of action against the defendant. The trial court found the allegations of the various counts of the complaint to be true, and entered the judgment in favor of plaintiff, from which this appeal is taken.

The alleged insufficiency of the evidence to support the trial court's finding, that for a valuable consideration the Goodyear Redwood Company assumed and agreed to pay to the plaintiff and his assignors the amounts due and unpaid for the various relinquishments obtained from them by the White Company, presents the meritorious contention to be considered on this appeal. In support of the allegation that such was the fact, the respondent was compelled to rely upon testimony produced from the camp of his adversaries, and upon evidence of other facts, which while not so intimately connected with the transactions in suit as to form part of them, tended in some degree to support plaintiff's cause of action. The defendant offered no testimony on the main point in controversy, and practically submitted the cause on the showing made by the plaintiff.

The record discloses that the L. E. White Lumber Com-

pany was engaged in operating a sawmill at Greenwood, in Mendocino County. It had acquired by purchase and assignment all the rights of one F. A. Hyde. in and to certain timber lands in the vicinity, under selections made by Hyde upon forest lieu scrip held by him. The plaintiff and his assignors, together with many other settlers, claimed rights in the same lands, based upon alleged homestead entries. As a result of the controversy which arose between the Lumber Company and the settlers, and on the eve of a hearing of the respective claims before the United States commissioner at Ukiah, it was agreed that the settlers would relinquish their rights in consideration of various sums paid to the respective homestead claimants. The Lumber Company, by its representative, Mr. Metson, entered into a written agreement to pay G. S. Arnold, representing eleven of the settlers, a designated sum of money for a relinquishment of these eleven claims, the amount to be paid whenever, and as soon as the Lumber Company should obtain patents to the relinquished lands under the forest lieu selection then pending before the United States land office.

The plaintiff and his assignors were not parties to this agreement, but at about the same time, and growing out of the same controversy, the defendant L. E. White Lumber Company entered into an oral agreement with each of them for a like relinquishment of homestead rights. It paid a portion of the agreed amounts, with the definite understanding and agreement that it would pay the balance to each settler when it obtained title to the land. These respective amounts have not been paid, and are the sums sought to be recovered in this action.

The contract with the settlers was made in 1912. In May, 1916, the appellant Goodyear Redwood Company acquired all the property of the L. E. White Lumber Company in Mendocino County. The exact nature of the transaction between appellant and the Lumber Company does not definitely appear from the record. The respondent suggests that it was in the nature of a reorganization of the Lumber Company and the continuation of its business under a new name. From the personnel, and interrelation of the officers and the attorneys of the two corporations, a very strong inference that such was the fact can

be drawn.   The appellant took over all the property of every kind and nature of the Lumber Company in Mendocino County, including its rights, whatever they were, to the lands which had been in dispute between it and the settlers, irrespective of whether or not title had been acquired.   Part of the assets it acquired was a large amount of Santa Fe scrip the Lumber Company had in its possession, and which would be available for use in securing the contested locations in case the government should reject its claims under application of the Hyde scrip.   The former manager of the Lumber Company testified that it was to be used for this express purpose.   After the transfer of all of its property to appellant, the L. E. White Lumber Company refused to pay the license tax required by the state, for the reason that it was doing no business under its franchise.   At the time of the sale the appellant was fully informed by the Lumber Company of all agreements it had with the settlers to pay the balance of the money for the relinquishments, when patents were issued or title secured.   That much is certain.   After that time the appellant was the active and interested party.   Whatever was done in the matter of securing title to the lands was done by it, the officers of the old lumber company "merely assisting," as from time to time requested.   The Lumber Company was under no obligation to make good, or pay anything back to appellant in case of failure to secure title to any of the land.   It was "out of it," so to speak.   [1] Notwithstanding the relation thus established between the Lumber Company and the appellant, the president of the Lumber Company testified that the appellant did not promise to pay plaintiff and his assignors, or the other settlers, the deferred payments due under their agreements when patents were secured.   To meet this testimony the respondent introduced in evidence the contract between the Lumber Company and Arnold on behalf of the eleven homesteaders, to which we have already referred, and followed this with testimony that the appellant had actually paid several of the settlers claiming under that agreement.   Appellant contends that the admission of this evidence was error.   We think not.   [2]   A fact in issue may be proved either by direct evidence of the fact or by proof of other facts or circumstances from which the fact in issue may

be inferred. (Code Civ. Proc., sec. 1870, subd. 15; *Title Ins. Co.* v. *Kuchenbeiser,* 20 Cal. App. 11, 13, [127 Pac. 1039].) Any evidence tending to show the probability or improbability of an issue of fact is relevant to such issue. It follows as a very logical inference from the fact that appellant recognized itself bound by and paid certain settlers according to the terms of one contract, that it was intended that it should, and we think did, assume on its part to pay the Lumber Company's obligation on the other contracts of identical import, made at the same time under the precise circumstances, and for the same purposes. (*Moody* v. *Peirano,* 4 Cal. App. 411, 420, [88 Pac. 380]; *Bone* v. *Hayes,* 154 Cal. 759, 767, [99 Pac. 172].) In the last case cited it was held that, while ordinarily evidence that a certain contract was made with A is not admissible to show that a similar contract was made with B, such evidence may, in the discretion of the court, be allowed where the circumstances indicate a strong probability that the course followed in one instance would be followed in others.

[3] At the conclusion of the plaintiff's evidence, the appellant moved for a nonsuit, which motion was denied. Mr. Drew, president of the White Lumber Company, was then called for the defendants. He testified that he conducted negotiations on behalf of the Lumber Company that resulted in the sale to the appellant. When asked if there was any agreement on the part of the appellant to be responsible for, or to assume any of the debts or obligations of the White Company, it appeared that there was such an agreement, that it was in writing, and that a copy of the contract was in existence. Counsel for the plaintiff successfully objected to any testimony as to its contents unless the witness produced the writing, which was not done. After the trial was concluded, but before decision, the defendants moved to reopen the case, the sole purpose assigned being to introduce certain designated portions of this agreement, which, it was alleged, would refute the claim of appellant's liability to the settlers. The court denied the motion. The sole reason given by the defendants for not producing the written agreement when its contents were under discussion and the cause was on trial, and in attempting to give oral evidence as to its contents, was

that its introduction was withheld at the urgent request of the appellant, that the contents of the contract be not divulged as appellant did not want to disclose the consideration paid by the Goodyear Redwood Company for the transfer of the White Company's property. The excuse was a weak one and apparently did not appeal to the court. Furthermore, the introduction of the portions of the contract designated without explanatory testimony would have accomplished little. We think there was no abuse of discretion in refusing to reopen the case.

Some point is made by the respondent of the fact that the president of the Lumber Company, while on the stand and while being examined as to the Arnold contract, made an explanation of his previous testimony, from which it may be argued that he testified that the appellant would be compelled under its agreement with the Lumber Company to pay all contracts with the settlers. The appellant disputes the effect of this testimony, but there is room for argument as to what was meant, and the construction to put upon the explanation of the witness, in view of the circumstances under which it was made, was a matter for the trial court.

[4] On the whole record we think the lower court was correct in reaching the conclusion that it was a part of the transaction between the Lumber Company and the appellant, that the appellant should, and that it did, assume the payment of the obligations of the Lumber Company to plaintiff and his assignors, and that the finding to that effect is sufficiently supported.

[5] Appellant contends that the agreement between the settlers and the White Company was that the former should not be paid the balance of the sum agreed upon for their relinquishments until the Lumber Company should have perfected title to the property; that even if it shall be held that appellant assumed to pay these obligations, the claims have not yet matured, for it does not appear that title to the property has ever been secured. In this connection it objected to the introduction in evidence of certain patents from the United States government to the Santa Fe Pacific Railroad Company, covering portions of the various lands relinquished by plaintiff and his assignors. But the right of the plaintiff to recover in this action does not depend

entirely upon a showing that the appellant has secured title to the lands in question. No time was fixed in the agreement between the Lumber Company and the settlers as to when it should perfect title to the claims and pay the remaining amounts due. It remained, therefore, for the law to annex as an incident to the contract that the title should be acquired within a reasonable time. Under the facts of this case the court would certainly find no difficulty in reading into the contract between the Lumber Company and the settlers an obligation on the part of the defendants to use reasonable diligence to secure title to the land, upon the completion of which the payment was contingent. (*Earle* v. *Sunnyside Land Co.,* 150 Cal. 214, 225, 226, [88 Pac. 920].) A period of five years elapsed between the making of the contract and the bringing of this action. The lower court was undoubtedly of the view, and we think properly, that a reasonable time for securing title had elapsed. The patents already actually procured are evidence of that fact, and also denote that the title to the land can no longer be in dispute. The appellant has not shown, nor attempted to show, but that the title to the land has been secured for it, nor has it assigned any reason for the long delay in seeking to perfect title if it has not done so, or why, if it be a fact, that cannot be done. Consequently, whether or not title has, as a matter of fact, been acquired by the appellant, we think there is ample reason for holding that payment should now be made to the settlers.

The findings are sufficiently supported by the evidence except in two particulars. The findings that prior to the commencement of this action the settlers E. E. Fitch and J. I. Alander assigned their claims to the plaintiff are not supported. The testimony of the assignor Fitch does not have that effect, and there is no evidence of any kind to prove an assignment by Alander. While, for this reason, the judgment must be reversed, there is no occasion to order a retrial of the issues which have already been correctly determined. (*Gray* v. *Cotton,* 166 Cal. 130, 139, [134 Pac. 1145]; *Fox* v. *Hale & Norcross Silver Min. Co.,* 122 Cal. 219, 222, [54 Pac. 731]; *Tunis* v. *Lakeport Agricultural Park Assn.,* 98 Cal. 285, 287, [33 Pac. 63, 477].)

The judgment is reversed and the cause remanded, with directions to the trial court to retry the single issue presented by the allegations of the third and fourth causes of action set up in the complaint, and the denials of the answers thereto, and to hear such evidence only as may be offered upon the sole point as to the sufficiency of the assignments of the respective causes of action to the plaintiff before the commencement of this action, and thereupon to enter judgment in favor of plaintiff for the amounts, if any are found due on said causes of action, together with the amounts already found to be due plaintiff on the first, second, and fifth causes of action.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 4, 1916.

All the Justices concurred except Angellotti, C. J., and Wilbur, J., who were absent.