[Civ. No. 13880. Second Dist., Div. Three. June 23, 1943.]

Estate of MADELINE BAIRD, Deceased. PULLAM SHERMAN, Appellant, v. JOHN INGELMAN et al., Respondents.

S. T. Hankey and G. Harold Janeway for Appellant.

Isaac Martin Sackin for Respondents.

SHINN, Acting P. J.—This is an appeal by Pullam Sherman from an order dated April 16, 1942, denying his petition for partial distribution under the will of Madeline Baird, deceased, and a judgment settling the final account of the executors and for distribution of all of the estate to said Pullam Sherman. The estate consisted of cash in the amount of $8,614.04, and a promissory note for $11,000 executed by John Ingelman (herein designated as respondent), one of the executors, in favor of the estate of decedent.

Respondent and his co-executor, a corporation, filed their final account, in which they listed the promissory note of Ingelman as one of the assets of the estate; the account was settled and the estate, including the note, was distributed to appellant as sole distributee. Appellant's contention is that it was the duty of the co-executor, John Ingelman, to account for the amount of the note as for cash on hand. He relies upon section 602 of the Probate Code, which reads as follows: "The naming of a person as executor does not thereby discharge him from any just claim which the testator has against him, but the claim must be included in the inventory, and the executor is liable for the same as for so much money in his hands, when the debt or demand becomes due." The question is whether the note fell due before the court approved the account and ordered distribution, for if it was then due Ingelman should have been charged with the amount of it in his account. (*Estate of King,* (1942) 19 Cal.2d 354 [121 P.2d 716].)

By his petition for partial distribution appellant sought distribution of the cash on hand but not the note. By the

account, the exceptions thereto, and the petition for partial distribution, an issue of fact was raised as to whether the note had become due, and this material issue was tried upon the hearing. The court made no findings as to the facts which would determine whether the note had become due, other than by means of recitals in the order appealed from. Since the sufficiency of these recitals to determine the issue of fact involved is not questioned by appellant, we shall treat them as sufficient.

Findings are required in the trial of contested probate matters where issues of fact are joined. (Probate Code, sec. 1230; Code of Civ. Proc., sec. 632; *Estate of Dodds,* (1942) 52 Cal.App.2d 287 [126 P.2d 150]; *Estate of Pala,* (1942) 55 Cal.App.2d 647 [131 P.2d 593].) The somewhat common practice of neglecting to make findings in such matters cannot be approved.

According to respondent (and the facts are not disputed), he borrowed $11,000 from the testatrix in October, 1935, and gave her a note for the amount, which drew interest at the rate of 2 per cent per annum and which was to become due when he sold certain lots which he owned in Hollywood. This note was not found among the belongings of decedent.

In August, 1940, upon petition filed by Ingelman, in which his co-executor did not join, an order was made allowing the executors to receive as evidence of the indebtedness a note reading as follows: "$11,000.00. Los Angeles, California, September 3rd, 1940. When I shall sell the Seaboard National Bank lots in Hollywood after date, I promise to pay to the order of the Estate of Madeline Baird, deceased, Eleven Thousand and no/100 Dollars, for value received, with interest at 2 per cent per annum from September 3rd, 1940, until paid, both principal and interest payable only in LAWFUL MONEY of the UNITED STATES. Payable when I sell my Seaboard National Bank lots in Hollywood. John Ingelman.'' The new note purported to follow, substantially, the terms of the original one, except as to name of payee and date.

The record shows that respondent owns property at the northwest corner of Whitley Avenue and Hollywood Boulevard in Hollywood, with a frontage on Hollywood Boulevard of approximately 92.5 feet and a depth of 115 feet. It is agreed that this is the property referred to in the note. It is improved with a steel and concrete building having store rooms on the ground floor, offices on the second floor, and a

penthouse above a portion of the second story. It is located within what is conceded to be the most valuable business section of Hollywood between Vine Street and Highland Avenue. The ground floor corner room is occupied by a branch of the Bank of America. In January, 1938, the property was mortgaged to Winter Investment Company for $136,000; this mortgage was retired and a new mortgage was given in August, 1941, for $123,000 in favor of Prudential Insurance Company. The property is subject to a 99-year ground lease which is now held by Hollywood-Whitley Corporation; it calls for rental of $1,800 per month and for payment of taxes by the lessee. For some three years prior to the trial the lessee had been paying only about $15,000 a year in addition to taxes, the lessor had been paying interest and installment payments on principal of the mortgage and above these payments had been receiving a net income from the property of between $2,000 and $3,000 per year. The lessor, respondent, is in a position to terminate the lease because of default in payment of rentals. The property as a whole is valued by respondent at from $250,000 to $300,000.

Appellant's contention is that the note would become due when a reasonable time had elapsed for sale of the property; he insists that the proof showed that such time had elapsed between the date when the money was borrowed and the date of trial, and that respondent should therefore have been charged with the amount.

Respondent contends that his obligation was only to use reasonable diligence to effect a sale of the property; that the evidence clearly showed that he had used such diligence and that, no sale having been made, the note was not due at the time of distribution and will never become due until a sale is made, providing respondent continues to endeavor diligently to effect a sale.

■ Undoubtedly the rule which applies to an obligation which is to be performed when certain property of the obligor is sold is that performance becomes due when a reasonable time has elapsed for the making of the sale. (*Lobree* v. *L. E. White Lumber Co.*, (1921) 53 Cal.App. 85, 92 [199 P. 821]; *Campbell* v. *Kennedy*, (1918) 177 Cal. 430, 432 [170 P. 1107]; *Van Buskirk* v. *Kuhns*, (1913) 164 Cal. 472 [129 P. 587, Ann. Cas. 1914B, 932, 44 L.R.A. N.S. 710]; *Spangenberg* v. *Spangenberg*, (1912) 19 Cal.App. 439, 444 [126 P. 379]; *Samuels* v. *Larrimore*, (1909) 11 Cal. App. 337, 339 [104 P. 1001];

*Earle* v. *Sunnyside Land Co.,* (1907) 150 Cal. 214, 224-5 [88 P. 920]; *Williston* v. *Perkins,* (1876) 51 Cal. 554.)

Cases relied upon by respondent, such as *Van Buskirk* v. *Kuhn, supra,* in which the promise was to pay ''when he is able'' or ''as soon as he gets the money'' or ''when it is convenient to pay'' are not in point. The most diligent effort to earn money may fail and in some cases indefinitely postpone the maturity of a debt because the parties have expressed that intention in the writing, but where payment is to be made when certain property has been sold, the debt falls due when a reasonable time has elapsed, even though no sale has been made. ■ The element of the use of diligence enters into contracts to pay when property is sold, to the extent that there is an implied obligation to make diligent effort to sell the property, and the use of diligence is a factor which is assumed in the determination of what would be a reasonable time within which to effect a sale. The mere fact that no sale has been made does not preclude the court from finding that a reasonable time has elapsed; the price and terms demanded may be just as important as the element of time.

■ We have concluded that the implied finding that a sufficient time had not elapsed for a sale of the property is without support in the evidence.

Appellant's evidence showed that some fifteen pieces of property had been sold in the business district in which the Ingelman lots are located during the 6½ years in question. These sales ranged from $37,500 to $908,000 and amounted in the aggregate to more than $3,000,000. It is not disputed that property in that locality is the most valuable business property in Hollywood. Respondent's property produced an income, after payment of taxes, of at least $15,000 per year. The proof offered by respondent was to the effect that he had had the property listed for sale with numerous agents during all of the time in question and that he had received no offer for it. However, it appears that he had made no effort to sell his interest in the property separately from the interest of the lessee. His direct testimony to that effect was not rendered less positive by his statement that he would have been willing to sell it ''either way.'' It had been listed for sale by the lessor and the lessee and they had given one option on it for a gross consideration of $250,000 or more, presumably because a portion of the price received would have gone to the lessee, but respondent had never listed or priced his interest

separately. It is clear from the record that respondent did not consider himself to be under any obligation to offer the property for a less price than the lessee agreed to, although the record is silent as to how the selling price would have been divided between them in case of a sale. The wording of the note did not allow respondent to withhold payment until he and Hollywood-Whitley Corporation had sold both of their interests in the property. The lessee was not obliged to sell and could, and evidently did, hold the price above what the market justified or the property as a whole could have been sold for. The note placed respondent under an obligation to use reasonable diligence to sell his lots and that could only mean his interest in the lots, which he did not at any time endeavor to do. It may be conceded that diligent effort was made to sell the entire property for $250,000 and that no offers were received, but where seven years have elapsed and no sale has been made, it must be that the price has been held too high. The property was well improved, well located, and was paying the lessor, above taxes, 6 per cent gross upon a valuation of $250,000. There is nothing in the evidence to justify the belief that respondent could not readily have sold his interest in the property at a price that would have given him several times the amount of the note. He was not obliged to sell it; he could hold it indefinitely in the hope that the prices of 1926-27 would return when, as respondent testified, his property was worth $400,000, but we cannot agree that he had the right, under his contract, to keep his friend's money at 2 per cent interest until he could get his price.

The judgment and order are reversed for further proceedings in accordance with the views herein expressed.

Wood (Parker), J., and Shaw, J. pro tem., concurred.

A petition for a rehearing was denied July 16, 1943, and respondents' petition for a hearing by the Supreme Court was denied August 19, 1943. Carter, J., voted for a hearing.