[Civ. No. 23108.   Second Dist., Div. Three.   Dec. 23, 1958.]

MARVYN M. OVERMAN, Appellant, v. ELVIN M. BRIGHT et al., Respondents.

N. E. Youngblood for Appellant.

Greenbaum, Baker & Ancel and Mark G. Ancel for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment for defendants in a suit for a declaration that the parties were partners and for an accounting.   As an alternative, plaintiff prayed for the reasonable value of services rendered.

Defendant Elvin M. Bright, referred to as defendant, doing business as Bright Laboratories, was engaged in the development and manufacture of plastics. The court found there was no partnership; any services rendered by plaintiff were performed as an employee of defendant; defendant had terminated plaintiff's employment for cause; and plaintiff had been fully compensated for all services rendered.

■ Plaintiff first asserts the court erred in excluding evidence of similar transactions between defendant and other persons. He argues that the principal issue at the trial was whether a partnership existed between plaintiff and defendant and that evidence of similar transactions between defendant and other persons was relevant to that issue. The partnership at bar was alleged to be oral and to have been entered into about January 1953. The evidence excluded was to the effect that in 1949 defendant had entered into an oral agreement of partnership with one Crossman and that later he had denied the agreement, and to the effect that defendant had promised one McDonald an interest in defendant's laboratories.

The evidence was properly excluded. The question here was whether defendant had entered into a partnership with plaintiff. The proffered evidence of defendant's conduct with others had no relevancy on that issue. ■ In *Lande* v. *Southern Calif. Freight Lines,* 85 Cal.App.2d 416 [193 P.2d 144], Mr. Justice McComb, speaking for the court, stated (p. 422):

*"Did the trial court commit prejudicial error in excluding evidence of contracts entered into between defendant and other persons during the period the contracts between plaintiff and defendant were negotiated, and which other contracts were similar to the contracts involved in the present litigation?*

"This question must be answered in the negative. It is the general rule that in the absence of a common plan, scheme, habit or usage, contracts between different parties have no probative value in the consideration and interpretation of other and different contracts even though one of the parties may be common to both. [Citations.] . . .

"[P. 423.] Applying the foregoing rule to the facts here involved it is apparent that the trial court properly excluded the questioned evidence. The other contracts offered were not material in determining the nature of the transaction between plaintiff and defendant. Since there was an absence of any claim that there was a common plan, scheme, habit or usage

followed by plaintiff, the general rule above stated is applicable.

"*Moody* v. *Peirano,* 4 Cal.App. 411 [88 P. 380]; *Lobree* v. *White Lumber Co.,* 53 Cal.App. 85 [199 P. 821], *Bone* v. *Hayes,* 154 Cal. 759 [99 P. 172], *Turner* v. *Luning,* 105 Cal. 124 [38 P. 687], *Asamen* v. *Thompson,* 55 Cal.App.2d 657 [131 P.2d 839], *Swanson* v. *Wilsen,* 13 Cal.App. 389 [110 P. 336], relied on by defendant, are all inapplicable for the reason that in such cases there were a series of agreements, each involving one common party and a number of separate parties, and such evidence was held admissible against the party who was common to all of them as evidence of a common plan, habit or usage, and in the nature of admissions against interest."

In the case at bar there was no proof or offer of proof of any common plan, scheme, habit, or usage; and the rulings were correct.

One count of the complaint alleged that within four years defendant became indebted to plaintiff for personal services of the reasonable value of $33,466. Plaintiff asserts the finding that he had been compensated for all services rendered is without evidentiary support. The only claim in this respect is as to an item of $900.

Defendant Bright testified that from January 1, 1953, to May 14, 1954, and at one period in 1955 plaintiff worked on a project with him known as a diving board project and that the project had been abandoned. Plaintiff testified that at the time defendant dispensed with his services, about January 16, 1956, defendant "said he would dig me up, dig me up nine hundred dollars within a few days"; defendant did not say what it was to cover; within 10 days defendant told him "he would have this nine hundred dollars that he could dig up for me"; defendant did not pay him the $900 or any part of it. Defendant testified further: "Now, Mr. Bright, with reference to the date of January 16, 1956, the time you had this conversation with Mr. Overman about termination of your relationship, did you have any conversation with him then about a nine hundred dollar payment? A. Yes, I think so. No, that was, I think a day or two later. Q. A day or two later, did you have a conversation with him about a nine hundred dollar payment? A. Yes. . . . Q. And what did he say and what did you say about that subject at that time? A. He asked me about the nine hundred dollars, the nine hundred dollars that he had received a credit for on early

work on the diving board project. Q. And is that the way he phrased it? A. As near as I can recall, yes. Q. And what did you say? A. I told him that as soon as the diving board project had reached a point where stock would be issued to all of the people involved in that program, that he would either receive his stock or he would get his nine hundred dollars but that in the meantime I would contact the other people in Recreation Products to see if anything could be done about paying him the nine hundred dollars at that time. Q. Anything else? A. I think that covers it all. Q. Had you mentioned Recreational Products Corporation to him before then as a corporation? A. Yes. Q. When for the first time did you do that? A. I don't remember. Q. Did you later have any further conversation with him about any nine hundred dollars? A. Yes, He called and asked about it after that. Q. But the nine hundred dollars was supposedly to cover whatever he had done in connection with the diving board project? A. That's right. Q. Was any portion of nine hundred dollars or any other sum ever paid to him? A. No. Q. By Recreational Products Corporation or Bright Laboratories or anyone else as far as you know? A. No. Q. Did you at that time have any conversation with him as to how you had arrived at the sum of nine hundred dollars on the diving board? A. No. Q. Nor he to you. Is that right? A. No.'' The foregoing appears to be all the evidence on the point.

The court could infer from the testimony of defendant that the services rendered in connection with the diving board project had been rendered by plaintiff to Recreational Products Corporation; that plaintiff was to be paid for the services only when the project had reached a point when stock could be issued to the people involved in the program; that at that time plaintiff would receive either stock or $900; and, since the project had been abandoned, nothing was owing to plaintiff. The evidence supports the finding that plaintiff had been compensated for all services rendered to defendant.

No other points are urged.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.