[Civ. No. 14195. Second Dist., Div. Three. June 8, 1944.]

Estate of JOHN E. KENNEDY, Deceased. CELIA KENNEDY, Appellant, v. A. B. ROGERS et al., Respondents.

[Civ. No. 14306. Second Dist., Div. Three. June 8, 1944.]

Estate of JOHN E. KENNEDY, Deceased. CELIA KENNEDY, Appellant, v. JACK WALDRON, as Executor, etc., et al., Respondents.

Wyckoff Westover and Steadman G. Smith for Appellant.

John P. Tobin and Dennis E. Bowman for Respondents.

DESMOND, P. J.—This case presents two appeals by Celia Kennedy, widow of John E. Kennedy, from orders in probate, which are to be disposed of as a single appeal, under order heretofore made. By the first order she was denied a family allowance requested after an earlier allowance had expired; by the second, the first and final account, and also a supplemental account, of the executor named in her deceased husband's will were settled over appellant's objections and the property of the estate on hand was distributed to Laura K. Rogers, sister of the deceased.

John E. Kennedy died on October 23, 1940, leaving an estate appraised at $4,940.75, consisting of $340.75 cash and one parcel of real estate, appraised at $4,600. In his will, dated September 30, 1935, Mr. Kennedy nominated his friend, Jack Waldron, executor without bond, and bequeathed his entire estate to his sister, and in the event she predeceased him, to her husband, A. B. Rogers. The will specifically disinherited testator's wife "because of her abandonment of me shortly after our marriage in 1918, and with whom I have not lived or cohabited since 1918." There were no children, issue of this marriage. Petition for probate of will was filed November 6, 1940, and it was admitted December 3, 1940.

The application for family allowance above mentioned was filed on September 21, 1942, two days before the date set for hearing upon the executor's first and final account and petition for distribution. At the same time, appellant filed her exceptions to the account and petition, reciting that a family allowance of $100 per month for a period of one year from date of death of decedent had been granted on July 1, 1941, to expire October 23, 1941, and praying that the hearing upon the first and final account and petition for distribution be ordered off calendar "until objector herein is granted a family allowance for the period from October 23, 1941 to date of closing said estate and the same paid for in full." The hearing on the final account was postponed from time to time and, ultimately, to March 23, 1943. Meanwhile, on October 14, 1942, an amendment to the exceptions was filed, in which the following recital appears: "That said first and final account, etc. shows on its face that certain alleged liabilities of the above entitled estate are still outstanding and have not as yet been liquidated and/or determined as follows to wit: determination as to the validity of the alleged claims

for $4,320.00 filed by A. B. Rogers and Laura Rogers for alleged board and room furnished the decedent, for the sum of $4,000.00 on an alleged note and mortgage filed by Laura K. Rogers and for a note in the sum of $1,000.00 filed by Laura K. Rogers.'' On that same date, a hearing on the petition for family allowance was had before the same judge pro tempore who had granted the first allowance, namely, Miss Florence Bischoff, a probate commissioner, and the petition was, by her, denied on December 29, 1942.

On March 1, 1943, a supplement to the first and final account was filed and, in her objection and exception to that supplement, appellant notified the court that on February 26, 1943, she had filed a notice of appeal from the order denying the family allowance and that if her appeal proved successful it would be necessary that the real property be sold and the proceeds of sale used to pay the sum so allowed her as a family allowance. Notwithstanding this objection, the court, as we have stated heretofore, ordered the real property, which was found to be the separate property of the deceased, distributed to the respondent, Laura K. Rogers, requiring the distributee, as a condition to distribution, to ''post a surety bond in the sum of $3,000.00 indemnifying the executor against any and all claims, demands, costs and attorneys' fees to which he may be subject by reason of said distribution having been made prior to a final adjudication of the claims of said Celia Kennedy.''

The first and final account, instead of following the usual course, declaring that all claims against the estate had been paid and that the estate was, therefore, ready for distribution, contained the following statement: ''That the time for filing creditor's claims has expired and the only claims filed against this estate are those on behalf of Laura K. Rogers, sole legatee and devisee, and A. B. Rogers, her husband. That the said Laura K. Rogers and A. B. Rogers, by and through their attorney, John P. Tobin, have executed and delivered to your petitioner a certain document purporting to withdraw each and all of said claims in accordance with the terms of said document; that a true copy of the same is attached hereto marked Exhibit 'A' and made a part hereof by this reference, and the same is submitted to the Court for its consideration and such action thereon as to the Court seems just and proper in the premises.'' The document referred to as Exhibit ''A,'' reads as follows: ''To THE HONORABLE, THE SU-

PERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF LOS ANGELES: The undersigned Laura K. Rogers, devisee and legatee of the above described estate, and A. B. Rogers, her husband, contingent devisee and legatee of above described estate, having heretofore filed certain lawsuits against the executor of said estate on claims rejected by him, together with an action for foreclosure of a mortgage on the only piece of real estate in said estate, and they, and each of them, being the only legal beneficiaries under said estate, agree to file a dismissal of each of said actions, being numbered 464248 and 472-684 in above court, with the Honorable Jess Stephens, Judge Presiding in the Probate department of above court, upon the following conditions: 1. That the Petition for Distribution and the accounting of the Executor be approved; 2. That there be no further claims of any or all nature be filed or approved by Executor or by the Court, including any claim for Family Allowance or continuance thereof in any way shape or form; it is understood and agreed, however, that the payment of the statutory fee for counsel or the fee acceptable to Executor or such taxes as may be levied are not to be included in the first portion of No. 2, hereof. 3. It is distinctly made a part of this agreement to enter dismissal that this agreement shall not constitute a dismissal of any rights actions or potential rights or potential actions by the signatories here*of*, nor is it intended by these presents to constitute a waiver of any and all rights therein, but that it is an agreement to file, in futuro, as aforesaid, dismissals in accordance with provisions of law relevant thereto forever relieving said Executor or said estate from any or all liability thereunder upon the happening of the foregoing contingencies.

A. B. Rogers<br>Laura K. Rogers''

When this account was filed, August 27, 1942, notice of hearing thereon, fixed for September 23, 1942, was served by the executor upon the contending parties. On September 21, 1942, two days before the date of the scheduled hearing, appellant filed her exceptions to that account and petition for distribution. Hearing upon the first and final account was postponed, as we have stated, to March 23, 1943. Meanwhile, Miss Bischoff had heard the petition for the extra family allowance and at that time the dismissals of suits,

mentioned in Exhibit "A," were discussed by the court, Honorable John Gee Clark, then handling the probate calendar, Miss Bischoff, and counsel. Following are excerpts from the transcript of proceedings had at that time:

"MR. TOBIN: . . . Counsel for the widow objected to the final account and his basis of objection at that time was that there were certain outstanding claims which had not been paid and that there were suits on those claims and that those suits were still on file. He never had filed objections to the account prior to that, but has since filed objections and Judge Stephens therefore continued the matter over [hearing on objections to final account] and I had before, and I have now, dismissals ready to be filed insofar as those suits are concerned. . . . However, Mr. Penprase [one of the attorneys for the executor] contended he should have some type of dismissal and I refused to file a dismissal of those suits for the simple reason that we did not want to lose our protection under that right. For that reason, I offered to dismiss those suits or to file a dismissal with the court, but do not care to do so unless this matter is approved, and Mr. Penprase, attorney for the Executor, incorporated that document and that paper in this petition for Final Accounting and that is part of the record here. . . . MR. SMITH: . . . Involved in the second petition, is the question of solvency of the estate under Section 680 of the Probate Code. I believe there were three claims filed which were rejected. . . . As to whether or not those claims are valid or not is the determining feature as to whether the estate is or is not solvent. That being the case, I couldn't come in at any time and say we were entitled to a family allowance until the validity of those claims are determined, that is the reason why we did not file our Petition for Family Allowance [the second one] some time ago. . . . In order to protect ourselves, we filed exceptions to the First and Final account. . . . Mr. Tobin or the beneficiaries entered into some sort of arrangement whereby if the Final Account were approved, they would agree to dismiss the suit, because of the fact that they were the heirs. . . . MR. TOBIN: The only reason the claims were not prosecuted was because it would entail further expense on their part. If they were going to get money, they would get it any way, that is the reason for not prosecuting the claims. MISS BISCHOFF: Whether or not it was their reason or whether it is a valid reason or not, it has considerable to do with the status of

the estate as to whether it becomes solvent or insolvent. MR. TOBIN: That is correct. MISS BISCHOFF: You will have to determine whether you are going to dismiss those claims and make it solvent or whether you are going to prosecute them. MR. TOBIN: The claims are on file, Your Honor. . . . MR. SMITH: . . . Those [claims] which have been allowed, leave the estate solvent; those which are rejected are the ones which would make the estate insolvent. On those claims rejected, suits have been filed. The rejecting of the claims and the filing of the suits, do not tend to make the estate insolvent; as the record stands, the estate is solvent. The presumption is as to solvency, not as to insolvency. Therefore, this estate is solvent until it is proved to be insolvent by the establishment of the validity of those suits on file in the Superior Court. . . . Is it the feeling of the court that our Petition for Family Allowance will have to go off calendar and the executor instructed to litigate these claims? MISS BISCHOFF: I think so, if those claims are good, the estate is insolvent. We cannot say it is not insolvent and spend out money that belongs to creditors. There are cases where the family allowance is only good for one year, automatically it would cease at the end of one year. I put that in probably to avoid any confusion because I thought they might think it could keep right on, I put in that order something that is a matter of law. . . . MR. TOBIN: We are willing to dismiss all of our claims, those two lawsuits and I am willing to file with Your Honor right now, dismissals of those two lawsuits and let the matter be submitted to Miss Bischoff. THE COURT: When you file those dismissals, does that make the estate solvent or insolvent? MR. TOBIN: We can't stipulate as to that, but we are willing to dismiss the lawsuits—— THE COURT: Are there any undetermined claims upon which suit has been filed? MR. TOBIN: No. MISS BISCHOFF: Are there any in the file? We will have to have written withdrawal of those. MR. TOBIN: I will file that, Your Honor. I will take care of the withdrawal of claims on those matters, those are the lawsuits that were on file against the estate. . . . THE COURT: Let the record further show that in the case of A. B. Rogers, et ux - vs - John Waldron, Defendant, No. 472684 in the Superior Court of this county, and that the case of Laura K. Rogers - vs - John Waldron, No. 464248, have been filed with the court, with prejudice, against all defendants dated August 21, 1942. . . . And that these dismissals may be filed,

they are not actually filed, they were handed to the court. MR. SMITH: Do we have any information that will tie those into the action on the rejected claims? MR. TOBIN: I can obviate the necessity of all of that by complying with Miss Bischoff's request to me, she asked me to file a withdrawal of those claims. MR. SMITH: Stipulate that the withdrawal of the claims be filed. THE COURT: Withdrawals of the rejected claims will be filed by—— MR. SMITH: Laura K. Rogers and A. B. Rogers. MR. TOBIN: Yes, they are the only legal heirs of the estate.''

 It appears from the findings entered by Miss Bischoff in the second proceeding for family allowance that the ''suits pending and claims on file were dismissed and withdrawn on or about the 14th day of October, 1942.'' Since these were dismissals with prejudice, Miss Bischoff, when they were filed, was in a position to find the estate solvent, as she did; but, in our opinion, this finding did not, in itself, require that a second allowance be granted. The estate was then ready to be closed by reason of the filing of the dismissals, and while, in our opinion, Miss Bischoff could have granted a second allowance to cover the period from October 23, 1941, to the date of closing the estate, she was also empowered to deny that request if she considered that the amount granted as the first allowance was ''reasonable'' within the meaning of section 680, Probate Code. (See *Estate of Coffin* (1936), 16 Cal.App.2d 532, 534 [61 P.2d 81].) In determining that question she had many facts before her. She knew, from having conducted a hearing at the bedside of Mrs. Kennedy when the first petition for a family allowance was under consideration, that Mrs. Kennedy was and had been a paralytic for many years. She knew, also, that Mr. and Mrs. Kennedy had lived separate and apart for a period of at least fifteen years prior to his death and that during that time Mrs. Kennedy had never received or claimed support from him, the record indicating that she had received support regularly from her brother. Prior to the first hearing, the claims of Mr. and Mrs. Rogers had been filed, as had the inventory of the estate showing assets less than the amount of the claims. It appeared from the objections filed by Mrs. Rogers to the petition for the second allowance that she, personally, had paid the amount thereof in a lump sum a few weeks before the first and final account was filed and that the payment reduced, by an equivalent amount, her equity in the estate,

which had been bequeathed to her by her brother. With all these facts before her, Miss Bischoff, on October 14, 1942, took under advisement the petition for the second allowance, counsel stipulating that she might consider, as evidence, the entire file in the Kennedy estate and the transcript of testimony taken at the time of the hearing upon the petition for the first allowance. When, two months later, on December 29, 1942, she entered the order denying the petition for the second allowance, she merely affirmed her earlier decision by which she limited the total allowance in this estate to the sum of $1,200. This clearly appears from the conclusion of law which she filed in the following language: "the petitioning widow has already received an award of family allowance, which said award of family allowance has been fully paid and satisfied and that said widow has received as much of the estate of deceased to which she is entitled by way of family allowance." We would not be justified in reversing the order unless we were satisfied that the trial court had abused its discretion. (11A Cal.Jur. 527.) It is quite apparent to us from the record, and it must have been to Miss Bischoff, that Mrs. Rogers, in order to keep intact her interest in the lot bequeathed to her by her brother, paid not only the family allowance of $1,200, but also charges against the estate for funeral expenses amounting to approximately $500. In view of the conditions to which we have alluded, and especially the small size of the estate, and the dismissals filed by Mr. and Mrs. Rogers, we cannot say that the denial of the second petition constituted an abuse of discretion.

It is contended that the findings made by Miss Bischoff in considering the petition for second allowance constituted a departure from the "law of the case" as established by the appeal which was taken from the order granting the first allowance in 1941. (*Estate of Kennedy* (1942), 51 Cal.App.2d 714 [125 P.2d 508].) It may be that certain findings upon the two petitions are irreconcilable, but we are not impressed by appellant's argument that no departure from the earlier findings is possible or permissible under the doctrine of the "law of the case," for, in our opinion, that doctrine does not apply in the present situation. In 42 Harvard Law Review at page 938, we find this comment upon the doctrine, "The rule is simple enough to state: the decision of an appellate court resulting in a remand for a new trial is binding on the parties in all subsequent stages of the

litigation, and is conclusive in the event of a second appeal to the same court.'' No proceeding was remanded by the appellate court in passing upon the merits of the appeal from the order granting the allowance in 1941. The present petition for family allowance is an entirely separate proceeding. Furthermore, the facts upon which it was held proper to grant a family allowance for the period of one year would not necessarily, and did not in the present case, compel the court to extend the allowance.

Since all claims against the estate had been disposed of prior to the hearing upon the final account before Honorable Thomas C. Gould, the judge sitting in probate at that time, nothing remained for him to do at that hearing except to consider the objections filed by appellant, to pass upon the correctness of certain charges against the estate and, since the objections were overruled, to order distribution according to the terms of the will. We have examined the order made by the court and believe that it disposed satisfactorily of all matters then to be adjudicated.

Appellant insists that the order settling the final account and for distribution must be reversed for the failure to make specific findings as to the matters in issue. Findings are required in the trial of contested probate matters where issues of fact are joined. (*Estate of Baird* (1943), 59 Cal.App.2d 303 [138 P.2d 698].) While the facts found may be stated in the order or decree (*Estate of Janes* (1941), 18 Cal.2d 512 [116 P.2d 438]), they should be stated as clearly and fully as in the decision of civil actions. But the only ground of objection was based upon appellant's application for further family allowance which had been denied, and an appeal taken. There was no issue of fact concerning her claim which required a decision by the court upon the settlement of the account and, in the final distribution, only questions of law. The recitals in the order were sufficient.

The purported appeal from the order denying a new trial in the proceedings by which the family allowance was denied on December 29, 1942, is hereby dismissed. (See 2 Cal.Jur. 173; *Estate of McCarthy* (1939), 36 Cal.App.2d 194, 195 [97 P.2d 480].)

Each of the probate orders appealed from is hereby affirmed.

Shinn, J., and Wood (Parker), J., concurred.