[Civ. No. 19864. First Dist., Div. One. Apr. 19, 1962.]

Estate of MAX FEIERMAN, Deceased. ZOLA EMANUEL et al., Claimants and Appellants, v. MARION FEIERMAN, as Executrix, etc., Petitioner and Respondent.

Francis J. McTernan, and Garry, Dreyfus & McTernan for Claimants and Appellants.

Kirkbride, Wilson, Harzfeld & Wallace and Norman Kavanaugh for Petitioner and Respondent.

TOBRINER, J.—We believe respondent's instant petition for instructions as to whether she should distribute certain bequests to Soviet claimants does not properly fall within section 588 of the Probate Code which was invoked in the instant matter. Even if the section applied, we cannot sustain the order upon either of two possible hypotheses as to the basis of the court's ruling. The first possibility is that the court rested its order upon the finding that the provisions of the will could not be executed and the bequests actually received by the claimants; yet the court failed to render any such finding. Nor do we believe the order should be sustained upon the second possible hypothesis that the probate court took judicial notice of Soviet law and found a lack of reciprocity of such law under section 259 of the Probate Code. The record does not indicate whether or not the court actually took such notice. We believe the better practice calls for the court's designation of whether or not it rested its ruling upon its judicial notice of foreign law and its recordation of the material upon which it has relied.

Max Feierman died on July 2, 1959, in Burlingame, California. The Superior Court of San Mateo County admitted his will to probate, and the wife of the decedent, Marion Feierman, qualified as executrix on August 4, 1959. Pursuant to section 588 of the Probate Code the executrix filed a petition for instructions requesting the court to inform her whether or not three legacies under paragraph seven of the will should be paid to the named persons.

Paragraph seven bequeathed $5,000 to decedent's wife "with instructions that she pay said sum to my nephew, Zola Emanuel . . . [who resides in the U.S.S.R.] *if he is then able to personally receive it and enjoy the benefit thereof.*" (Emphasis added.) The will provided for a second gift of $100 to decedent's wife to be given upon the same condition to another nephew, Feuerman Samuel, also a resident of the U.S.S.R. On the identical condition the will granted a third gift of $100 to another nephew, whose name was unknown by the testator. The final provision of this paragraph of the will stipulated that upon the death or "inability" of the nephews "to receive their bequests" within five years of the death of the testator, the money remained the separate property of the testator's wife.

The above-mentioned petition for instructions alleged that the attorney for the decedent advised him that the attorney "had been informed that there was no reciprocal treaty which would permit persons behind the iron curtain to receive bequests from estates in the United States, and said Max Feierman believed that his nephews . . . would be able to receive legacies only if they escaped from behind the iron curtain. . . ." The petition also set out that respondent's attorneys wrote to the Secretary of State of the United States requesting information as to the situation in the Soviet Union, and on November 4, 1959, received a reply from the Chief, Division of Property Claims, Estates and Legal Documents, Department of State, stating that "The Department is informed that under foreign exchange control regulations of the Union of Soviet Socialist Republics dollar funds remitted through banking channels are retained by the Soviet Government and the person to whom the. remittance is directed receives Soviet currency at a fixed rate of exchange." The communication also stated: "The Secretary of the Treasury is authorized by law (31 U.S.C. 123) to determine the countries to which United States Treasury checks may not be sent because local conditions preclude assurance that the payee will receive the check and if he receives it will be able to negotiate it for its

full value. The list of countries to which checks are not sent (31 C.F.R. 221.3) includes the Union of Soviet Socialist Republics.''

Finally, the petition for instructions included as exhibits letters from appellants' attorneys stating their representation and asserting that they would ''exhibit . . . various documents and data which will convince you and reassure . . . [you] that the heirs in the Soviet Union will actually receive and have the beneficial use of the money.'' The petition annexed as an exhibit a letter dated December 1, 1959, from the American Embassy at Moscow asserting that it was ''the Embassy's understanding, based in part on statements from several Soviet heirs to estates in the U.S., that in law and in practice Soviet heirs may receive inheritances from the United States at the established exchange rates for currency and dispose of the proceeds for their own benefit as they see fit.''

The court held a hearing on the petition for instructions, entering into evidence two exhibits, marked, respectively, exhibits A and B, which were submitted by the legatees. Exhibit B consisted of the report of the referee in another case (*Estate of Anna Smith* (1960) Superior Court No. 124249), which also involved inheritance by Soviet citizens from the estate of a decedent domiciled in California. In that case the referee found that reciprocity existed between the two countries. Exhibit A consisted of the reporter's transcript from the above-mentioned case of *Estate of Smith*; it contained the documents set forth in the footnote.[1]

---

[1] Exhibit A contained, among others, the following documents:

(1) The transcript from another case, the *Estate of Singer* (Superior Court, No. 126663).

(2) The findings of fact and conclusions of law in another case (*In re Salman-Gorina*, Superior Court No. 650174). One of the conclusions of law reached in that case was that a reciprocal right did exist between citizens of the United States and the U.S.S.R. in 1952.

(3) A letter from Manufacturer's Trust Company setting out the method of sending funds from the United States to the U.S.S.R.

(4) A report of Professor Harold J. Berman of Harvard Law School to the Probate Court, Suffolk County, Mass., dated October 15, 1958, regarding a delivery of funds that Prof. Berman made to a legatee in the Soviet Union at the direction of the court. The report sets forth Prof. Berman's belief that the recipient would be able to use the funds personally.

(5) Deposition of Dora Einhorn, a resident of the Soviet Union regarding the inheritance by the witness from the estate of a relative in the United States and the personal receipt and enjoyment of such funds.

(6) A deposition of Abram Salman, also a Soviet resident, to the same effect as the prior deposition.

(7) A certificate from the Soviet Embassy in Washington, D. C.

The court held in a memorandum decision, and set out in its probate minutes, that both counsel conceded that no reciprocal treaty between the U.S.S.R. and the United States covered the subject matter. The court further stated that section 259 of the Probate Code required reciprocal rights of the citizens of the respective countries as a prerequisite to inheritance and that section 259.1 of the Probate Code "places the burden upon such nonresident aliens to establish the fact of existence of such reciprocal rights." The court concluded that "[t]he nephews have not alleged or proved such reciprocity"; it held: "The Executrix, Marion Feierman, is therefore instructed to pay the sum of $5,200.00 referred to in paragraph Seventh of the will, to testator's wife, Marion Feierman, upon final distribution of the estate."

We shall point out that a petition for instructions under section 588 of the Probate Code does not afford a procedure for determination of those who are to take under the will in the manner that the court determined in the instant case. We shall explain, further, that even assuming the petition for instructions were proper, and even assuming that the court's ruling could be sustained upon the ground that the provisions

---

stating that "the proceeds of decedents' estate in the United States to which legatees, distributees and beneficiaries who are nationals of or residents of the Soviet Union are entitled, are paid to them in full without limitations and without the retention of any sums for the benefit of the State." The certificate states that sums received by Soviet citizens or residents by inheritance from estates in the United States are not taxable in the Soviet Union, and that such sums are exchanged for rubles at the rate of 10 rubles to the dollar, rather than the official rate of 4 rubles to the dollar.

(8) A letter from the American Embassy in Moscow, dated December 1, 1959, the contents of which we have set forth above. A similar letter dated January 14, 1960, is found on page 122 of the transcript.

(9) A memorandum decision of Judge Sherry of the Superior Court in *Estate of Gogabashvele* (Superior Court No. 56752). (The District Court of Appeal reversed this decision in *Estate of Gogabashvele* (1961) 195 Cal.App.2d 503 [16 Cal.Rptr. 77].) The superior court opinion discusses the testimony and writings of Dr. Gsovsky and concludes: "Those quotations and his letter of November 13, 1959, seem to contradict Dr. Gsovsky's testimony at the trial that the Soviet judges were compelled to decide according to the whims or caprices of those in charge of the Soviet Government."

(10) A letter from the Soviet Embassy in Washington, D. C. stating that Soviet citizens may inherit from American estates without hindrance of a Soviet tax, that they have the full use and enjoyment of such funds and that such money is exchanged at the fixed rate of ten to one. The letter proceeds to state that there are many cases where American residents have inherited from Soviet estates, and lists many specific examples.

(11) Receipts and a letter from the American Express Company to Soviet heirs regarding payment to the Soviet heirs of their share of an American estate.

of the will could not be executed because the Soviet claimants would not personally receive the benefit of the bequests, the order cannot stand because the court failed to make a specific finding on that fact. Further assuming the validity of the procedure, and taking the alternative assumption that the court did not rest its order upon the above basis of the non-receivability of the bequests, but upon the lack of reciprocal rights under section 259 of the Probate Code, we believe the court should have made such determination explicit for the guidance of the appellate court.

■ The courts have held that a party may employ section 588 only in the absence of other or different procedures available for the establishment of the sought rights; the presence of adequate procedures for the designation of those entitled to receive legacies under the terms of a will preclude the use of the section. The section reads: *"In all cases where no other or no different procedure is provided by statute,* the court on petition of the executor or administrator may from time to time instruct and direct him as to the administration of the estate and the disposition, management, operation, care, protection or preservation of the estate or any property thereof. Notice of the hearing of such petition shall be given for the period and in the manner required by section 1200 of this code." (Emphasis added.)

The court in *Estate of Thramm* (1945) 67 Cal.App.2d 657 [155 P.2d 119] held that section 588 of the Probate Code could not be invoked in a situation similar to the instant one. In that case the will provided: " 'A year after my death my estate should be settled if it is impossible to do so, with Germany, then everything should go to my brothers Otto & Fred Tilsner and *her* children.' " (P. 657.) Pursuant to section 588, the trial court construed the will to mean that " 'if the war between Germany and the United States is not concluded within one year after testatrix' death' " the bequest should be distributed in the manner it set forth. (P. 658.) In reversing the trial court, the appellate court points out that the section "does not empower the court at any stage of the proceedings when the executor may petition for instructions as to the management of the estate, to make an order which purports to be an adjudication as to the persons who take under the will and the shares which they take." (P. 658.)

The appellate court concludes: "The court in probate has no power to decide how an estate is to be distributed through probate, except in proceedings expressly authorized for that

purpose, and none are authorized for the trial of the issues that may be presented other than proceedings for distribution, or to determine heirship. Any intermediate orders giving directions to an executor for his guidance during the course of the administration, which might require an interpretation of the will, must be tentative in effect, insofar as they relate to matters which must be determined by decree of distribution. The controversy here was one which could not be determined by an order purporting to interpret the will. The order must therefore be reversed." (P. 659.)

While *Thramm* dealt with the section in a situation in which it was used for a petition for an interpretation of the will, rather than for a petition for instructions as in the instant case, the difference in the requests works no difference in the result. In the instant case the petition poses the same essential question as in *Thramm*: whether the legacies should be paid to residents of a foreign land upon final distribution of the estate.

*Estate of Clippinger* (1946) 75 Cal.App.2d 426 [171 P.2d 567] follows *Thramm* and holds analogous proceedings under section 588 void. In that case the decedent directed: " 'I give any balance there may be to the trustees of the Order of the Eastern Star Home at Rockford Illinois. . . .' " (P. 428.) The petition for instructions recited that "there was no official body of said home known as trustees; that the Grand Chapter, Order of Eastern Star" was an incorporated nonprofit corporation; that the executor "believed that decedent intended by said bequest to give the residue of her estate to said Grand Chapter." (P. 435.) The probate court directed "that upon distribution of the estate the residue should be distributed to said Grand Chapter. . . ." (P. 435.) The appellate court reversed, stating: "Respondents' contention that said order is void and of no effect must be sustained. The court is without power to make an order determining who may take under a will except upon a petition for partial or final distribution or to determine heirship. The petition of the executor was not for any of such purposes and the order made thereon purporting to direct the manner in which the estate should be distributed is void." (P. 435.)

As the foregoing decisions have held, the section is not available if other procedures provide for determination of those persons entitled to receive legacies under the terms of a will. At least three alternative methods were available here: (a) petition for preliminary distribution (Prob. Code,

§ 1000), (b) petition for final distribution (Prob. Code, § 1020), and (c) petition to have heirship determined under Probate Code section 1080. A petition for instructions under section 588 of the Probate Code does *not* constitute an added procedure for achieving this end. (See Price, *Instructions*, Cal. Estate Admin. (Cont. Ed. Bar), pp. 757, 762; Executors and Administrators, 20 Cal.Jur.2d, § 232, pp. 349, 350-351.)

 Even if we assume the propriety of the present procedure, however, we could not sustain the order. Conceivably the probate court's ruling could have rested upon its determination that the Soviet bequests were not actually collectible and thus the provisions of the will not enforceable, but, in such case, the probate court has failed to render a finding to that effect.

It will be recalled that the testator provided that the sums be paid to each nephew ''if he is then able to personally receive it and enjoy the benefit thereof.'' The determination of whether or not each nephew was able personally to receive and enjoy the bequest formulated a factual, rather than a legal question; indeed, the nephews, in their own words, submitted data to establish that they would *''actually receive* and have the beneficial use of the money.'' (Emphasis added.) The question of receipt does not turn primarily upon the provisions of Soviet *law* as to its recognition of the reciprocal right of American citizens to collect Soviet inheritances (Prob. Code, § 259) or involve the elements of *legal* reciprocity as such (*Estate of Schluttig* (1950) 36 Cal.2d 416, 426 [224 P.2d 695]), but depends upon a showing of the likelihood that the claimants will actually and in fact get the funds dispatched to them.

The evidence presented to the court as to this issue was in conflict. As we have noted, respondent relied upon the letter from the Department of State which states that Russia is included in the list of countries ''to which United States Treasury checks may not be sent because local conditions preclude assurance that the payee will receive the check and if he receives it will be able to negotiate it for its full value.'' Claimants' countervailing evidence consisted of Exhibits B and A (the contents of which are listed in footnote 1), which included data to the effect that legatees in the Soviet Union have actually received inheritances from estates in the United States. The contrasting proof of the parties obviously raised a question of fact.

The letter of the Department of State declared that the

Secretary of the Treasury, pursuant to his duty to ascertain those countries to which United States Treasury checks could not be sent, has concluded that they may not be transmitted to the Soviet Union because "local conditions *preclude assurance* that the payee *will receive the check* and if he receives it will be able to negotiate it for its full value." (Emphasis added.) The Secretary of the Treasury apparently decided that too much risk and doubt attach to the receipt of such checks to enable him to designate the Soviet Union as a country where the recipient will be able to negotiate the checks at full value. The probate court could conceivably have accepted this document as indicative of the fact that the claimants here would not be able "personally" to "receive" the bequests and to "enjoy the benefit thereof."

To any such reliance of the trial court upon the letter, appellants offer two objections, but even if they fail, we shall point out that we still could not uphold the order upon the above ground. The trial court did not find that the claimants would not personally receive the bequests.

Appellants contend both that the Department's letter was self-contradictory and that it was not introduced into evidence. They argue "that in other parts of the letter a different conclusion is reached concerning private funds." Yet the letter merely states: "The Federal Government places no restrictions upon the transfer of private funds to individuals resident in the Union of Soviet Socialist Republics. If desired, such transfers may be accomplished through normal banking channels." The absence of the federal government's prohibition of the transfer of private funds does not affect the force of the decision of the Secretary of the Treasury as to the assurance of receipt of funds transmitted to the Soviet Union.

Assuming, however, that the court did rely upon the letter, and assuming the failure to introduce it into evidence could be overcome because appellants have not presented us with a reporter's transcript to show it was *not* so introduced, and affording every favorable intendment to sustain the order (*People* v. *Goodall* (1951) 104 Cal.App.2d 242, 249 [231 P.2d 119]; *Cockrill* v. *Clyma* (1893) 98 Cal. 123, 126 [32 P. 888]; *Caruthers* v. *Hensley* (1891) 90 Cal. 559, 560 [27 P. 411]), we are still met by the crucial failure of the probate court to posit its ruling upon that ground. We cannot sustain the order upon that basis in the absence of a finding to that effect. (Prob. Code, § 1230; *Estate of Kennedy* (1944) 64 Cal.App. 2d 757, 766 [149 P.2d 319]; see also: *Estate of Baird* (1943)

59 Cal.App.2d 303, 305 [138 P.2d 698]; *Estate of Mesner* (1949) 95 Cal.App.2d 265, 267 [212 P.2d 267].)

Turning to the second supposition which we have suggested *supra,* we once more assume the validity of the procedure pursuant to section 588 of the Probate Code. We recognize that the probate court's ruling may have rested upon its judicial notice of the lack of reciprocal rights of the citizens of the United States to take personal property upon the same terms and conditions as those of the Soviet Union. (See *Estate of Gogabashvele* (1961) 195 Cal.App.2d 503 [16 Cal.Rptr. 77].) In such event the ruling would necessarily depend upon the probate court's *judicial notice* of the provisions of Soviet law. The probate court has not, however, indicated whether or not it has taken judicial notice of such law. In the event the ruling were based upon that determination, the court should have so stated and should have made a record of the material upon which it relied.

The amendments to section 1875 of the Code of Civil Procedure enacted in 1957 provide that ''Courts take judicial notice of the following: . . . 4. The law and statutes of foreign countries and of political subdivisions of foreign countries; provided, however, that to enable a party to ask that judicial notice thereof be taken, reasonable notice shall be given to the other parties to the action in the pleadings or otherwise. . . .'' The enactment further provides: ''In all these cases the court may resort for its aid to appropriate books or documents of reference. In cases arising under subdivision 4 of this section, the court may also resort to the advice of persons learned in the subject matter, which advice, if not received in open court, shall be in writing and made a part of the record in the action or proceeding.''

The amendment derived from the fact that, as stated by the California Law Revision Commission, Recommendation and Study Relating to Judicial Notice of the Law of Foreign Countries, California formerly followed the rule that ''foreign law must be pleaded and proved as a fact and that in the absence of proof such law will be presumed to be the same as the decisional and statutory law of this State . . .'' (p. I-14) and that this procedure, unfortunately, resulted in contradictory conclusions as to the interpretation of identical provisions of foreign law. The amendment sought to prevent such confusion.

Coincident with the 1957 amendments to section 1875 of the Code of Civil Procedure, the Legislature amended section

259.1 of the Probate Code. In the place of the former requirement that the claimant prove *"the fact of* existence of the reciprocal rights set forth in section 259" (emphasis added) the Legislature provided that he prove "the existence of the reciprocal rights. . . ." The two amendments thus enabled the trial court in proper manner to take judicial notice of the provisions of Soviet law.

The court in the instant case did not indicate whether or not it took judicial notice of Soviet law; it did not notify the parties that it would take judicial notice of the provisions of Soviet law; it made no record of the matter which was judicially noticed, if any, and it rendered no specific conclusions as to the provisions of Soviet law. Some commentators and authorities, however, suggest compliance with each of these three postulates.[2] We do not hold that the trial court should be compelled to meet all of them; on the other hand, we believe a minimum requirement to be that the trial court should state whether or not it has thus taken judicial notice and that it should make a record of the materials upon which it has relied.

The Uniform Rules of Evidence drafted by the National Conference of Commissioners on Uniform State Laws suggests recordation of the material upon which the trial court relies, and the Commissioners set forth as Rule 11 the following: "If a matter judicially noticed is other than the common law or constitution or public statutes of this state, the judge shall

---

[2]While section 1875, subdivision 4, Code of Civil Procedure, is silent as to the obligation of the court as to notification to the parties, the Recommendation and Study relating to Judicial Notice of the Law of Foreign Countries of the California Law Revision Commission (Feb. 1957) does urge the imposition of that duty upon the court. The Commission specifies that the court should notify the parties of such intention, saying: "If the present rule that the law of a foreign country must be pleaded as any other fact in the case is eliminated by either authorizing or requiring the courts to take judicial notice of it, some alternative provision should be made for notice to the court and the parties that the law of a foreign country is thought applicable and will be relied upon. Such notice should be required not only by the parties *but also by the court* if it intends to decide the case under foreign law even though no party has requested it to do so." (P. 20; emphasis added.) The Commission points out that the Model Code requires "the judge to inform the parties of the tenor of any matter to be judicially noticed by him and afford each of them reasonable opportunity" to present information as to the matter to be noticed. (P. 21.) The Commission explains that it is important that such notice be given because "[o]pposing counsel would rarely be able to assert from his general knowledge that the law of a foreign country on the specific point involved is not as stated by the party relying upon it. Extensive research would almost always be necessary. Without a requirement of notice, the danger of surprise would appear to be great." (P. 21.)

indicate for the record the matter which is judicially noticed and if the matter would otherwise have been for determination by a trier of fact other than the judge, he shall instruct the trier of the fact to accept as a fact the matter so noticed." (P. 170.)

While the court is not required to set forth in findings the content of foreign laws which it has judicially noticed, its failure to indicate for the record the matter which it has judicially noticed leaves the appellate court in ignorance of the basis of its ruling. So far as we know, the court made no determination as to the actual provision of the Soviet law on reciprocity. A specific statement on this issue would have enlightened the appellate court and expedited an informed disposition of it by this court. Its absence leaves the issue in the realm of the unknown and the unresolved.

We are in no position to pass upon the legal issues of a case when we completely lack a description of the trial court's foundation for its judgment; the function of review itself contemplates a defined body of material for review. We therefore suggest that, upon the presentation of this matter on the proper procedure, the probate court, in adjudicating the issue, specify for the record, if this be the fact, (1) that the court has taken judicial notice of Soviet law, (2) the materials upon which it has relied.

We reverse the order of November 23, 1960, instructing and directing the executrix to pay the sum of $5,200 to the testator's widow, and the minute order of said date.

Bray, P. J., and Sullivan, J., concurred.