[Civ. No. 23761. Third Dist. Feb. 25, 1986.]

Estate of WILLIAM NICHOLAS, Deceased.
DONALD F. LINSTEADT, as Successor Trustee, etc.,
Petitioner and Respondent, v.
NICOLI G. NICHOLAS, Objector and Appellant;
MARIA NICHOLAS KELLY et al., Claimants and Respondents.

**COUNSEL**

Weintraub, Genshlea, Hardy, Erich & Brown, Joseph S. Genshlea, L. Burda Gilbert and Robert L. Shipley for Objector and Appellant.

King & Mering, Cynthia Z'berg, Estella A. Schleicher, McNeil, Silveira & Fabian and Ronald A. Silveira for Petitioner and Respondent and for Claimants and Respondents.

**OPINION**

**SIMS, J.**—In this case, we consider various questions arising out of a trustee's petition for instructions as to the administration of a testamentary trust.

William Nicholas died in 1966 leaving three children, son Nicoli G. Nicholas (hereafter Nicoli) and daughters Eugenie Nicholas Murdock (hereafter Murdock) and Maria Nicholas Kelly (hereafter Kelly). William left his entire estate to Bank of America in trust until his youngest child, Maria, reached the age of 40 years. The will directed the trustee to operate the Nicholas Ranch in Sutter County and to employ Nicoli as ranch manager subject to the trustee's absolute discretion and control. Other relevant provisions of the will granting powers to the trustee are discussed in the body of the opinion.

The will also provided that "This trust shall cease and terminate when my youngest child . . . shall attain the age of 40 years. My said trustee shall then distribute and deliver all of the remaining trust estate to my three children in equal one-third shares . . . ."

Fourteen days before the trust was scheduled to terminate (on Kelly's 40th birthday) Kelly filed a petition for partition of the Nicholas Ranch. Nicoli filed a response opposing the partition and Murdock filed objections to the partition. Because the trust was near termination the successor trustee had filed his fourth and final account and report and had petitioned the court for his fees.

On May 17, 1982, with the express agreement of the beneficiaries, the trial court ordered that the trust continue under supervision and control of the trustee until further order of the court.

The trust had operated for more than a year after its scheduled demise when on October 28, 1983, the trustee filed a petition for instructions and for authority to sell a herd of livestock located on and owned by the Nicholas Ranch. The herd included both ordinary "sale cattle" and apparently rare Cebullaise cattle raised for breeding purposes. The trustee alleged in his verified petition that he "believes it is in the best interests of the Trust Estate that the livestock be sold" and that the two beneficiary sisters, Murdock and Kelly, had requested that the livestock be sold as soon as possible.

The trustee alleged that he "is informed and believes, and therefore alleges that a registration of the livestock would be advantageous to the trust and could result in a maximization of sales proceeds." He also alleged that "all of the records and documents necessary for registration of the livestock are in possession of the ranch manager, NICOLI NICHOLAS."

Nicoli filed verified objections to the petition for instructions in which he alleged that sale of the breeding cattle was not in the best interest of the

trust for a variety of reasons.[1] Nicoli also alleged the breeding herd of cattle was unique, irreplaceable, and especially valuable due to a special breeding program he had undertaken for 30 years. Nicoli asserted he personally owned the "registration privileges" for much of the breeding herd. He based his claim on the fact he personally owned all but one of the original bulls which fathered the herd.

At the hearing on the petition for instructions, Nicoli strenuously opposed the trustee's request that Nicoli be ordered to register the breeding herd without compensation for his "personal" contribution to the herd. Nicoli requested that he be allowed to brief the issue and present evidence on the cattle industry's registration custom and practice which allegedly supported his position. The trial court denied this request.

At the conclusion of the hearing the trial court granted the petition. A formal order was subsequently entered directing the trustee to sell all cattle belonging to the trust and ordering Nicoli to register the cattle without receiving personal compensation.

Nicoli appeals, claiming: (1) the trial court's order is void because the trustee failed to send statutory notice of the hearing on requested instructions to children, including Nicoli's son, who would receive their parent's share of the trust corpus should their parent die before termination of the trust; (2) the trial court's order authorizing sale of the cattle is not supported by substantial evidence in the record; and (3) the trial court's order directing Nicoli to register the cattle cannot stand because it exceeds the court's jurisdiction and deprives Nicoli of property without due process of law.

We conclude Nicoli waived any objection to notice but the trial court's orders directing registration and sale of the breeding cattle must be reversed.

DISCUSSION

I

Nicoli first contends the trial court had no jurisdiction to make its order of instructions because no proper notice had been given of the hearing at which instructions were determined. (See *Estate of Jenanyan* (1982) 31 Cal.3d 703, 708 [183 Cal.Rptr. 525, 646 P.2d 196].) Nicoli asserts that

---

[1]Nicoli did not object in the trial court to a sale of the "sale cattle." He makes no objection in this court to a sale of the "sale cattle" and, in any event, he has waived any such objection.

various sections of the Probate Code[2] required that notice be given to children who would share in the trust corpus only upon their parent's death if the trust corpus had not been previously distributed.

"The trial court is without jurisdiction to make an order which has not been properly noticed, *unless the right to notice has been waived.*" (*Id.*, at p. 708, italics added.) "Even where improper notice . . . would otherwise deprive a court of jurisdiction to make an order or pronounce judgment, the order or judgment will not be declared void if the complaining party has waived the defect." (*Estate of Poder* (1969) 274 Cal.App.2d 786, 791 [79 Cal.Rptr. 484].)

Here, Nicoli does not contend *he* received improper notice. Rather, he asserts an alleged failure of the trustee to give notice to contingent beneficiaries voids the proceedings. For present purposes we assume arguendo the contingent beneficiaries were entitled to notice. However, any defects in notice to the beneficiaries were readily discoverable by Nicoli at the hearing. Having made no objection in the trial court to any improper notice, and having allowed the court to adjudicate the matters at issue, Nicoli may not now complain that notice to others was defective. (*Gilmour* v. *Gilmour* (1930) 105 Cal.App. 372, 373 [287 P. 534].) "To hold otherwise would impermissibly permit a party to gamble without risk by allowing proceedings to continue to conclusion without objection, claiming reversible error only if the conclusion were unfavorable." (*Trail* v. *Cornwell* (1984) 161 Cal.App.3d 477, 484 [207 Cal.Rptr. 679].)

## II

We next consider Nicoli's contention the trial court's order authorizing the trustee to sell the breeding cattle is unsupported by substantial evidence in the record. However, in order to determine whether the record contains substantial evidence, we must first discover what the trustee had to show. The first question is: substantial evidence *of what?*

A. *No Special Rules Applied Because the Trust Was in the Process of Winding Up.*

Under section 1120, the superior court retains jurisdiction over certain testamentary trusts to pass upon acts of the trustee. ▮ Among the purposes of a petition for instructions under section 1120 are (1) to allow the trustee to protect himself from liability for his acts and (2) to provide speedy resolution of disputes between beneficiaries and trustees. (3 Scott on Trusts

---

[2]All further statutory references are to the Probate Code unless otherwise indicated.

(3d ed. 1967) § 259, p. 2214; *Copley* v. *Copley* (1978) 80 Cal.App.3d 97, 104-106 [145 Cal.Rptr. 437].)

The law applicable to the supervision of a trust by a court may depend upon whether a trust is in the process of winding up. ■ Where the terms of a trust fix the period of its duration, the trust terminates on the expiration of that period. (60 Cal.Jur.3d, Trusts, § 242, pp. 372-373.) The trust continues for the purpose of winding up. The period for winding up the trust is the period after the time for termination has arrived and before the trust is terminated by the distribution of the trust property. (Rest.2d Trusts, § 344, com. *a*, p. 191.) The winding up process involves distribution and conveyance of the trust property to those entitled to it. (60 Cal.Jur.3d, Trusts, § 249, pp. 379-380.)

■ ■ ■ ■ ■ ■ Here the trust had terminated by its own terms in 1982 and was in the process of winding up at the time the court heard and determined the questions before us. The powers of a trustee during winding up are not always the same as those powers before termination.[3] However, if the beneficiaries consent to the trustee's holding and administering the trust property after the expiration of the trust term, the life of the trust will be deemed extended and the powers and duties of the trustee continue un-

---

[3] " '[T]he trustee has such powers and duties as are appropriate for the winding up of the trust.' " (*Botsford* v. *Haskins & Sells* (1978) 81 Cal.App.3d 780, 784 [146 Cal.Rptr. 752] [adopting view of Rest.2d Trusts, § 344].) The trustee has such powers as are " 'necessary or proper for the preservation of the trust property,' " such as the power to maintain actions on behalf of the trust. (*Botsford, supra,* 81 Cal.App.3d at p. 785; *Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328, 337 [187 Cal.Rptr. 14].)

During winding up, the trustee has the duty to take such steps as are necessary to terminate the trust by making a distribution of the trust property. The trustee has the duty to exercise reasonable care and prudence in the preservation of property until distribution. (Rest.2d Trusts, § 345, com. *h*, pp. 196-197; Bogert, Trusts and Trustees, § 1010, p. 450.) The court retains jurisdiction to determine the extent of and enforce the trustee's obligations during winding up. (*Hise* v. *Superior Court* (1943) 21 Cal.2d 614, 625 [134 P.2d 748] [even if liquidation of trust assets terminated trust, trustee's obligations continued until proceeds distributed; court had jurisdiction to impress lien].) The court retains jurisdiction under section 1120 until the entire trust estate is finally disposed of, and the trustee is entitled to discharge. (*McAdoo* v. *Sayre* (1904) 145 Cal. 344 [78 P. 874] [discussing former Code Civ. Proc., § 1699].)

A power of sale does not necessarily continue after the time for termination has arrived. The question is whether the sale serves any trust purpose that the testator intended to be so served. (Annot. (1955) 43 A.L.R.2d 1102, 1103-1104.) For example, a power to sell for investment purposes does not continue after termination. (Rest.2d Trusts, § 344, com. *d*, p. 192.) But a power of sale to pay trust debts ordinarily continues as long as debts remain unpaid. (43 A.L.R.2d at p. 1113.)

A testator's direction as to distribution often determines whether or not a power of sale continues during winding up. (*Id.,* at p. 1109.) Courts often conclude that the power of sale does not survive termination where the testator directs distribution of trust property in specified shares at the end of the trust term. (*Id.,* at p. 1115.) But courts often construe broad discretionary powers of sale to be exercisable for the purpose of division or distribution of the trust estate. (*Id.,* at p. 1119.)

changed. (Bogert, *op. cit. supra,* § 1010, p. 463.) Here, as Nicoli acknowledges in his brief, all beneficiaries expressly agreed that the trustee could continue administration of the trust after termination. No party has contended any special rules of winding up apply. We shall therefore measure the trustee's powers by rules applicable to the duties of the trustee managing an active trust before termination. (*Ibid.*)

B. *The Trust Instrument Did Not Give the Trustee Absolute Discretion to Sell the Cattle.*

■ In passing on a request for instructions respecting the administration of an active trust, the extent and nature of the powers afforded a trustee depend primarily upon the intention of the settlor, which is to be gathered from the trust instrument as a whole.[4] (*Estate of Ferrall* (1953) 41 Cal.2d 166, 176 [258 P.2d 1009]; *Estate of Marre* (1941) 18 Cal.2d 184, 188 [114 P.2d 586]; Rest.2d Trusts, § 187, com. j, p. 408.) ■ The extent of a trustee's powers depends on whether the trustee has been given "absolute" powers, on the one hand, or mere "discretionary" powers on the other.[5] (See 60 Cal.Jur.3d, Trusts, §§ 103-104, pp. 160-166.)

Civil Code section 2269 specifies standards by which the courts are to review the acts of a trustee in light of powers granted by the trust instrument. (See, e.g., *Neel* v. *Barnard* (1944) 24 Cal.2d 406, 417 [150 P.2d 177]; *Estate of Landau* (1958) 158 Cal.App.2d 176, 180 [322 P.2d 222]; *Estate of Heard* (1951) 107 Cal.App.2d 225, 233 [236 P.2d 810, 27 A.L.R.2d 1313].) ■ However, an initial question is: which version of Civil Code section 2269 controls?

In 1961, when the instant trust was created, and in 1966, when the testator died, Civil Code section 2269 provided as follows: "A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper court if not reasonably exercised, *unless an absolute discretion is clearly conferred by the declaration of trust.*" (Italics added.)

In 1981, the statute was substantially amended; the italicized language was deleted. (Stats. 1981, ch. 1046, pp. 4032-4033.) The statute was again

[4]No extrinsic evidence of the settlor's intent was introduced in the trial court.

[5]A grant of absolute power to a trustee does not immunize the trustee's acts from review by a court. (*Estate of Ferrall, supra,* 41 Cal.2d at p. 173.) However, an absolute discretion, exercised in good faith by a trustee, cannot be controlled by a court on considerations going to the soundness of the discretion exercised. (*Estate of Charters* (1956) 46 Cal.2d 227, 239 [293 P.2d 778].) The court can interfere with an absolute power only upon pleadings, proof, and findings of fraud, bad faith, or abuse of discretion. (*Ibid.*) This rule applies even where a trustee initiates a petition for instructions. (*Id.,* at p. 232.)

amended in 1983 to its present form (Stats. 1983, ch. 99, § 3) and its pertinent provisions are set forth in the margin.[6]

Ordinarily, the pre-1981 statute would be applied to the trust document in this case upon the theory that "it must be presumed that the person who drafted the intricate will, as well as the testator, must have had the law in mind as it prevailed at that time." (*Estate of Heard, supra,* 107 Cal.App.2d at p. 232.) However, the 1981 amendment contained an uncodified section 2, which provided in pertinent part that the new statute "shall apply to any trust, after the effective date of this act, whether the trust instrument was executed before or after that date. No inference shall be drawn from the enactment of this section as to heretofore existing law." (Stats. 1981, ch. 1046, § 2, p. 4033.)

We shall abide by the command of this enactment and apply current Civil Code section 2269 to the instant dispute.[7] In doing so, we need not resolve the meaning of the puzzling and cryptic provision in the 1981 enactment stating that "No inference shall be drawn from the enactment of this section as to heretofore existing law." ■ Arguably the language is designed to neutralize the ordinary canon of statutory construction holding that where the language of a statute is changed by an amendment, the Legislature intends to change the law. (See *People* v. *Cicero* (1984) 157 Cal.App.3d 465, 476 [204 Cal.Rptr. 582] and authorities cited therein.) ■ Nonetheless,

---

[6]Civil Code section 2269 provides in pertinent part as follows: "(a) Except as provided in subdivision (c), a discretionary power conferred upon a trustee is presumed not to be left to his or her arbitrary discretion, but shall be exercised reasonably.

"(b) The exercise of a discretionary power is subject to review by a court of competent jurisdiction.

"(c) Subject to the additional requirements of subdivision (d), where a trust instrument confers absolute, sole, or uncontrolled discretion upon a trustee, the trustee shall act in accordance with fiduciary principles and shall not act in bad faith or in disregard of the purposes of the trust.

"(d) Notwithstanding the trustor's use of terms such as 'absolute', 'sole', or 'uncontrolled', a person who is a beneficiary of a trust and who, either individually or as trustee or cotrustee, holds a power to take or distribute income or principal to or for the benefit of himself or herself pursuant to a standard shall exercise that power reasonably and in accordance with the standard. In any case in which the standard governing the exercise of the power does not clearly indicate that a broader power is intended, such a holder of the power may exercise it in his or her favor only for his or her health, education, support, or maintenance, and the exercise of the power shall be subject to review by a court of competent jurisdiction."

[7]The 1983 amendment to Civil Code section 2269 does not alter this conclusion. The 1983 amendment affected only the codified provisions contained in section 1 of the 1981 enactment; section 2 was unaffected by the 1983 amendment and remains in effect. (See Cal. Const., art. IV, § 9; *People* v. *Western Fruit Growers* (1943) 22 Cal.2d 494, 502-503 [140 P.2d 13]; *Estate of Cottle* (1983) 148 Cal.App.3d 1023, 1027-1028 [196 Cal.Rptr. 440]; *Orange County Water Dist.* v. *Farnsworth* (1956) 138 Cal.App.2d 518, 524-525 [292 P.2d 927].)

if the 1981 amendment is construed most favorably to the trustee, it eliminated the previous requirement that an absolute discretion be "clearly conferred" in the trust document. For present purposes, we shall assume arguendo the 1981 amendment accomplished that purpose. However, as we shall see, the 1981 amendment cannot carry the day for the trustee, because the trust document, reasonably construed, does not grant the trustee absolute discretion to sell the cattle.

■ Subdivisions (b) and (c) of Civil Code section 2269 still provide that a trustee's acts shall be reviewed differently according to whether the trustee has been given merely discretionary powers, on the one hand, or absolute, sole or uncontrolled discretion, on the other. (See fn. 6, *ante.*) Although we are assuming arguendo the 1981 amendment to Civil Code section 2269 eliminated the requirement an absolute discretion be "clearly conferred," nothing in the amendment nor in logic suggests that the Legislature intended to abrogate the meaning given to words in trust documents by the courts over the decades. If the Legislature wishes to eliminate the historic gloss given to trust language by the courts, and relied upon by the practicing bar in the drafting of instruments, it must say so in plainer language than is contained in the recent amendments to Civil Code section 2269. Consequently, in interpreting the trust document, we have in mind that the drafter of the trust and the settlor "had the law in mind as it prevailed at that time" (*Estate of Heard, supra,* 107 Cal.App.2d at p. 232), at least with respect to language previously given a definitive judicial interpretation.

■ In this regard, we are mindful that the cases had approved certain words as conveying to a trustee an absolute discretion. Not surprisingly, the most common is the adjective "absolute" when used in connection with "discretion," "control," or "power." (See, e.g., *Estate of Charters, supra,* 46 Cal.2d at p. 238; *Neel* v. *Barnard, supra,* 24 Cal.2d at p. 416; *Estate of Canfield* (1947) 80 Cal.App.2d 443, 446 [181 P.2d 732].) Also common are the words "sole discretion" or "sole judgment." (See e.g., *Estate of Ferrall, supra,* 41 Cal.2d at p. 173; *Estate of Marre, supra,* 18 Cal.2d at p. 186.) Conversely, where trust instruments have specified it is "the duty and power" of a trustee to make a decision (*Estate of Heard, supra,* 107 Cal.App.2d at pp. 226-227) or where the trustees are empowered to act "in their discretion" (*Estate of Gross* (1963) 216 Cal.App.2d 563, 566 [31 Cal.Rptr. 281]), the powers have been ruled merely discretionary and not absolute. ■ We therefore turn to the will to ascertain the nature and extent of powers granted the trustee.

The third paragraph of the will provides in pertinent part "that my trustee maintain and operate said ranches until either of the contingencies as here-

inafter set forth shall occur. It is also my will that said trustee employ my son, Nicoli Nicholas, to manage and operate said properties on a salary basis, *subject, however, during the term of this trust to the absolute control and authority and discretion of my said trustee.*" (Italics added.) This provision clearly gives the trustee absolute discretion *over Nicoli's decisions* with regard to management and operation of the ranch. However, the clause, which is obviously designed to prevent Nicoli from usurping the trustee's powers, does not on its face give the trustee absolute discretion to operate and manage the ranch itself.

If this paragraph of the will stood in isolation, it might be subject to an interpretation giving the trustee absolute discretion over management and operation of the ranch, including whether to sell any cattle. However, "Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. ■■ ■■ ■ All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole . . . ." (§ 103.)[8]

■■ The third paragraph of the will provides further, "It is my request that the trustee hold, retain and continue to operate my property as businesses solely at the risk of the trust estate and without liability on the part of the trustee, should any losses result therefrom; *to* dissolve, maintain or *sell any part or the whole thereof, at any time the trustee may deem it for the best interests of the beneficiaries.*" (Italics added.) This paragraph refers specifically to the trustee's powers with respect to the operation of the trustee's property as businesses and, even more specifically, to the sale of assets. Adhering to the principle that the provisions of the will should be neither redundant nor in conflict (§ 103), we conclude this paragraph grants the trustee power to sell the cattle on the ranch.

The power is to sell "at any time the trustee may deem it for the best interests of the beneficiaries." This language is merely the equivalent of a grant to the trustee to sell the cattle "in his discretion" and does not confer absolute discretion on the trustee. (See *Estate of Gross, supra,* 216 Cal.App.2d at p. 566.) This is particularly so because, as we have seen, the testator apparently recognized how to use language to convey absolute discretion and did not do so here. (*Id.,* at p. 567.) Finally, any doubts we may have as to the discretion conferred are resolved by language later in the third paragraph stating, "I hereby confer upon my trustee and I intend

---

[8]The statute applies to testamentary trusts. (See *Estate of Marre, supra,* 18 Cal.2d at p. 188.) With respect to estates of decedents who died on and after January 1, 1985, section 103 has been replaced with section 6161. However, because here the testator died before January 1, 1985, section 103 applies. (§ 6103.)

by this instrument to grant *broad discretionary powers,* without liability, as I have full confidence in my said trustee." This inclusive language, appearing near the end of the trust's provisions, is entitled to considerable weight. (See *Copley* v. *Copley* (1981) 126 Cal.App.3d 248, 284-285 [178 Cal.Rptr. 842].) Broad discretionary powers are not absolute powers. For purposes of review under Civil Code section 2269, we conclude the testator granted the trustee discretionary, not absolute, power to sell the cattle.

C. *The Burden of Proof Was Upon the Trustee to Show His Requested Exercise of a Discretionary Power Was Reasonable.*

"The exercise of a discretionary power is subject to review by a court of competent jurisdiction." (Civ. Code, § 2269, subd. (b).) A discretionary power conferred upon a trustee is presumed not to be left to his or her arbitrary discretion but shall be exercised reasonably. (Civ. Code, § 2269, subd. (a).) ██ " 'A discretionary power conferred upon a trustee may be controlled by the proper court if not reasonably exercised.' " (*Crocker-Citizens National Bank* v. *Younger* (1971) 4 Cal.3d 202, 212 [93 Cal.Rptr. 214, 481 P.2d 222, 56 A.L.R.3d 1228], quoting *Estate of Traung* (1962) 207 Cal.App.2d 818, 834 [24 Cal.Rptr. 872].)

██ Where a trustee has exercised absolute powers, the trustee is entitled to a presumption that he has acted in good faith, and the burden is upon an objecting beneficiary to show a bad faith exercise of absolute powers. (*Estate of Ferrall, supra,* 41 Cal.2d at p. 177; see *Coberly* v. *Superior Court* (1965) 231 Cal.App.2d 685, 690 [42 Cal.Rptr. 64]; *Estate of Canfield, supra,* 80 Cal.App.2d at p. 451.) However, we are aware of no rule to the effect that a trustee seeking to exercise discretionary powers, and petitioning the court for instructions, is entitled to a presumption that the requested powers will be exercised reasonably. Generally a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the asserted claim for relief. (Evid. Code, § 500.) Here, the trustee sought instructions in part to obtain insulation from liability. ██ In effect, the trustee pursued a "claim for relief" within the meaning of the Evidence Code. Moreover, the trustee knows the reasons for his contemplated action and has at his ready command whatever evidence tends to show his action will be undertaken reasonably. ██ We therefore conclude a trustee petitioning for instructions as to the exercise of a discretionary power has the burden of proving the exercise will be reasonable.

It is in this context that Nicoli contends no substantial evidence supports the trial court's order.

D. *No Substantial Evidence Supports the Court's Order Allowing the Trustee to Exercise His Discretionary Powers.*

 Nicoli first argues *no* legally cognizable evidence was introduced at the hearing on the trustee's petition. This claim is premised on the fact that the petition was adjudicated upon the trustee's verified petition and Nicoli's verified written objections thereto. Nicoli asserts the trial court was required to hold a full evidentiary hearing at which witnesses could testify. With respect to the issue of whether the livestock should be sold, we must disagree.[9]

Evidence Code section 300 states: "Except as otherwise provided by statute, this code applies in every action before the Supreme Court or a court of appeal, superior court, municipal court, or justice court, including proceedings in such actions conducted by a referee, court commissioner, or similar officer, but does not apply in grand jury proceedings." The Probate Code does not exclude probate proceedings from the rules of evidence. Probate jurisdiction is in the superior court. (*Copley* v. *Copley, supra,* 80 Cal.App.3d at p. 107.) This means, "The general rules and principles of evidence apply, of course, to evidence in actions relating to trusts." (60 Cal.Jur.3d, Trusts, § 334, p. 514, citing *Young America Engine Co.* v. *Sacramento* (1874) 47 Cal. 594 [parol evidence rule].)

 Ordinarily affidavits may not be used in evidence unless permitted by statute. (*Estate of Fraysher* (1956) 47 Cal.2d 131, 135 [301 P.2d 848].) However, where the parties do not object to the use of affidavits in evidence, and where both parties adopt that means of supporting their positions, the parties cannot question the propriety of the procedure on appeal. (*Ibid.*) Such is the case here with respect to the issue of the sale of the cattle. The trustee's petition and Nicoli's written objections were both verified in the form of declarations under penalty of perjury. (Code Civ. Proc., § 2015.5.) Absent an objection, these documents were properly considered as evidence. (*Estate of Fraysher, supra,* 47 Cal.2d at p. 135; *Hand* v. *Board of Examiners* (1977) 66 Cal.App.3d 605, 615 [136 Cal.Rptr. 187].) Having failed to object to the trustee's verified petition, and having submitted verified documentary objections in response, Nicoli may not now complain.

 In his verified petition the trustee alleged: that "Petitioner [trustee] believes that it is in the best interests of the Trust Estate that the livestock be sold," and that "Two of the Trust beneficiaries, namely, MARIA KELLY and EUGENIE MURDOCK have requested that Petitioner sell said live-

---

[9]In part IV, *post,* we agree that Nicoli's request for a full evidentiary hearing on the issue of cattle registration should have been honored.

stock as soon as possible." These terse assertions constituted the only evidence received by the trial court in support of the trustee's request to sell the cattle.[10] The trustee's petition stated no other reasons or circumstances in support of his request.

We will not pause long over the trustee's bare assertion that he believes it is in the best interest of the trust that the livestock be sold. The trustee's mere belief, unsupported by *any* facts or circumstances underlying the decision, does not constitute substantial evidence of reasonableness. A contrary conclusion would make a mockery of the process by which a court "instructs" a trustee, because the court would simply ratify the unexamined decision of the trustee.

Nor is substantial evidence of reasonableness found in the assertion that two of the three beneficiaries requested the trustee to sell the livestock as soon as possible. This averment meant no more than that two of the three beneficiaries wanted the cattle sold. ▮ However, "A trustee . . . owes a duty of impartiality to all who have an interest in the trust and must deal impartially among the several beneficiaries. [Citations.]" (*Crocker-Citizens National Bank* v. *Younger, supra,* 4 Cal.3d at p. 219, fn. 7 (conc. opn. of Sullivan, J.); see also Bogert, *op. cit. supra,* § 541, pp. 156-157; 2 Scott on Trusts, *op. cit. supra,* § 183, pp. 1471-1472.) ▮ Moreover, even a majority of beneficiaries cannot authorize a trustee to act contrary to the terms of a trust or statute. (60 Cal.Jur.3d, Trusts, § 120, p. 184.) ▮ The request of the two beneficiaries, in and of itself, does not constitute substantial evidence that sale of the cattle was reasonable in the interest of all beneficiaries or of the trust estate.

The trustee contends evidence in support of the trial court's order can be located in sources other than his verified petition. The trustee first argues the trust had been subject to supervision by the court, that previous accountings showed the trust had accumulated substantial debt, and that the trial court was entitled to take judicial notice of its own records.

However, the plain fact is no request for judicial notice was made, nor is there any indication in the record that the trial court took judicial notice of anything. " 'The trial judge should always be careful to *specify exactly* the document or portion of a document contained in a court file of which he is taking judicial notice. Also, counsel should be required to state, with *like specificity,* the exact document or portion of a document from a court file or record, when requesting the court to take judicial notice of a court

---

[10]It is unnecessary to summarize Nicoli's evidence, since it tended to show sale of the cattle was not in the best interest of the trust and was therefore unreasonable.

record.' (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 47.2, p. 1757.)" (*In re David C.* (1984) 152 Cal.App.3d 1189, 1205 [200 Cal.Rptr. 115], italics in original.) Where the trial court makes no statement on the record as to matters of which it takes judicial notice, the absence of such a statement "leaves the issue in the realm of the unknown and the unresolved." (*Estate of Feierman* (1962) 202 Cal.App.2d 552, 563 [20 Cal.Rptr. 883].) ▮ In the absence of an indication on the record of matters judicially noticed, an appellate court ordinarily cannot conclude substantial evidence may be located somewhere in matters hypothetically subject to judicial notice. (*Id.*, at pp. 553, 562-563.)

▮ Moreover, Nicoli correctly asserts that if we were to *assume* the trial court took judicial notice of any matters, Nicoli would be deprived of his right under Evidence Code section 455 to litigate the propriety of taking judicial notice. Evidence Code section 452, subdivision (d) allows the trial court in its discretion to take judicial notice of its own records. However, if the subject of judicial notice is "of substantial consequence to the determination of the action," Evidence Code section 455 requires the court to allow each party to present information relevant to the propriety of taking judicial notice and as to the tenor of the matter to be noticed. (*Estate of Russell* (1971) 17 Cal.App.3d 758, 765 [20 Cal.Rptr. 88].) Here, the previous financial condition of the trust would have been "of substantial consequence to the determination of the action." (See *id.*, at p. 766.) Absent notice to the parties, the trial court could not take judicial notice of records of the court containing financial information. (*Ibid.*)

▮ Nor may we deem the failure to notify the parties harmless. (Cf. *People* v. *Carnesi* (1971) 16 Cal.App.3d 863, 867 [94 Cal.Rptr. 555].) As Nicoli points out, whether the trial court could have taken notice of the *truth* of facts set forth in any court record depends in part on the nature of the record. (See *Day* v. *Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918].) Moreover, even assuming the truth could be considered, prior records of the court contained information not necessarily current at the time of the instant hearing. In the absence of an indication the court would take judicial notice, Nicoli had no occasion to rebut stale information. We therefore conclude the device of judicial notice will not supply evidence in support of the trial court's order.

The trustee also argues the trial court had before it information contained in unsworn memoranda of points and authorities prepared and filed by counsel for beneficiaries Murdock and Kelly. ▮ However, it is settled that, except for stipulations or admissions contained therein, the unsworn pleadings of counsel do not constitute evidence. (*Bostic* v. *Love* (1860) 16 Cal.

69, 72-73; *Mills* v. *Vista Pools, Inc.* (1960) 184 Cal.App.2d 668, 672 [7 Cal.Rptr. 545].)

 Finally, the trustee suggests the trial judge was "familiar with the case." Respondent cites no authority indicating how a judge's "familiarity" with a case is a substitute for evidence, and we are aware of none. Moreover, we grant Nicoli's unopposed formal request for judicial notice (Evid. Code, §§ 452, 459; *People* v. *Meza* (1984) 162 Cal.App.3d 25, 33-34 [208 Cal.Rptr. 576]) of the clerk's minutes in this action showing the trial judge last presided over this case some six and one-half years before the hearing at issue. The judge's "familiarity" with the case was therefore at best "a remembrance of things past."

The record contains no substantial evidence showing a sale of the breeding cattle was reasonable. (Civ. Code, § 2269, subd. (a).) The order directing sale of the breeding cattle must therefore be reversed.

### III

 Nicoli also argues sale of the breeding cattle is inconsistent with his father's testamentary intent. Nicoli contends sale of the breeding cattle deprives him of his right to receive one-third of the herd in kind pursuant to his petition for partition of personal property (§ 1100). At this point, we must disagree.

As noted above, the will clearly authorizes sale of any and all trust assets by the trustee. Nicoli's right to partition of the trust property commences only at the conclusion of the trust, i.e., when the "heirs, devisees or legatees *are entitled to the distribution of* undivided interests in . . . personal property of the decedent . . . ." (§ 1100, italics added.) Until the trust is finally terminated, in this case by order of the probate court, Nicoli has no right to distribution of any portion of the trust assets and may not complain if the trustee, in the exercise of a reasonable discretion, sells them in the interim.

### IV

 We lastly consider Nicoli's contention the trial court erred in ordering him in his individual capacity to register the herd of breeding cattle. The point is meritorious since the record is devoid of any evidence the registration privileges were the property of the trust.[11]

---

[11] The issue of ownership of registration privileges was sufficiently tendered to the trial court by the trustee's verified petition and Nicoli's verified objection.

 It is established that "All proceedings in the probate court are limited and special or limited and statutory (*Estate of Schloss* (1961) 56 Cal.2d 248, 253 [14 Cal.Rptr. 643, 363 P.2d 875]). The power of the probate court extends only to the property of the decedent. An attempt to take and distribute the property of a living person is a violation of due process (7 Witkin, Summary of Cal. Law (8th ed. 1974) § 237, p. 5745; *Stevenson* v. *Superior Court* (1882) 62 Cal. 60; *Estate of Paulsen* (1917) 35 Cal.App. 654 [170 P. 855])." (*Estate of Lee* (1981) 124 Cal.App.3d 687, 692 [177 Cal.Rptr. 229].) The trial court sitting in probate had power over the cattle registration privileges only if those privileges were the property of the trust. If, as Nicoli contends, those privileges belong to him the trial court was without authority over them. (*Ibid.*)

As we noted above, Nicoli sought the trial court's permission to conduct an evidentiary hearing at which he could show the industry practice and custom with respect to cattle registration privileges.[12] The trial court did not allow Nicoli this opportunity. However, there was no evidence in the record from which the trial court could dispute Nicoli's assertion in his verified objection that the registration privileges belonged to him. To be sure, there was ample evidence the trust owned the cattle located on the ranch. That much Nicoli conceded. However, no evidence suggested that ownership of the cattle established ownership of the registration privileges. The only evidence in the record consisted of Nicoli's verified objection in which he asserted the registration privileges belonged to him. The trial court's order requiring Nicoli to accomplish registration is contrary to the only evidence in the record and is thus in excess of the court's limited jurisdiction.[13] (*Estate of Lee, supra,* 124 Cal.App.3d at p. 692.) The order requiring Nicoli to register the breeding cattle must be reversed. For the benefit of the parties on remand, we note that section 851.5 specifies the appropriate procedures to be followed to adjudicate the ownership of the registration privileges. (See *Estate of Linnick* (1985) 171 Cal.App.3d 752, 760 [217 Cal.Rptr. 552].)

---

[12] At the hearing on the petition Nicoli's counsel stated, "Now my client's position in this matter is not that he is refusing to register the cows, but rather that he is refusing to register them without compensation for his own proprietary rights in the registration . . . . [¶] He's entitled to brief the issue. He's entitled to present evidence concerning the ownership and the proprietary rights to that registration and the practice in the industry, so a full blown hearing can be had on that issue and its significance."

[13] Although Judge Babich heard the matters before us, the formal order appealed from was signed by the presiding judge apparently in the absence of Judge Babich. We conclude the statement in the order dated January 13, 1984, signed by the presiding judge, that "no evidence was offered by the Objector [Nicoli] in support of the issues raised by the objections," is erroneous as a matter of law. We shall disregard that statement.

Nicoli does not contend the order is void *in its entirety* because it was signed by the presiding judge rather than Judge Babich; we thus have no occasion to consider that issue. (See *Armstrong* v. *Picquelle* (1984) 157 Cal.App.3d 122, 126-129 [203 Cal.Rptr. 552].)

██ Both sides have requested this court to "augment the record" with certain other materials. Beneficiary Murdock asks that the record be augmented to include matters related to a subsequent partition proceeding. However, the parties acknowledge that the order or judgment in that matter has been appealed; there is not yet any final order or judgment that merits res judicata effect. We perceive no other useful purpose in the materials and therefore deny the motion to augment. We believe the trial court, on remand, can best survey the issues litigated in the partition proceeding and determine whether to abate the instant proceeding pending final resolution of the partition matter.

Nicoli's request for augmentation of matters related to his posting of a bond on appeal is similarly denied.

### DISPOSITION

The order appealed from is affirmed to the extent it instructs the trustee to sell the ordinary "sale cattle." In all other respects, the order is reversed. Appellant shall recover his costs on appeal.

Puglia, P. J., and Carr, J., concurred.

On March 13, 1986, the opinion was modified to read as printed above.